SQUEALER FEEDS and Liberty Mutual Insurance Company, Appellants,

v.

Robert PICKERING and Division of Industrial Services, Appellees.

No. 94–17.

Supreme Court of Iowa.

April 26, 1995.

Iris J. Post and David C. Duncan of Grefe & Sidney, Des Moines, for appellants.

David D. Drake, West Des Moines, for appellee Pickering.

Thomas J. Miller, Atty. Gen., and Craig Kelinson, Sp. Asst. Atty. Gen., for appellee Div. of Industrial Services.

TERNUS, Justice.

Appellee, Robert Pickering, wants to examine the entire claim file of appellant, Liberty Mutual Insurance Company. Liberty Mutual has produced all documents prepared up to and including the date it denied Pickering's claim for workers' compensation benefits. It resists discovery of that portion of its file postdating the denial. Liberty Mutual contends that those materials are irrelevant and are protected by the work product doctrine and the attorney-client privilege. Pickering says that the file is relevant and is discoverable under Iowa Rule of Civil Procedure 125(a)(I)(C), allowing discovery of an expert's opinions and facts known to the expert, because Liberty Mutual designated its prior attorney as an expert witness.

The deputy industrial commissioner ordered Liberty Mutual to produce its entire file. The industrial commissioner rejected the insurer's request for review on the basis that the appeal was interlocutory. The district court denied judicial review for the same reason.

We conclude that the district court should have permitted Liberty Mutual to appeal the deputy's discovery order. Because we think the deputy abused his discretion in ordering the production of the entire claim file, we reverse and remand for further proceedings consistent with this opinion.

### I. *Background Facts and Proceedings.*

Robert Pickering worked for appellant, Squealer Feeds. He injured his back and applied for workers' compensation benefits. Liberty Mutual, the workers' compensation insurer for Squealer Feeds, denied Pickering's claim.

Pickering then filed an action with the Iowa industrial commissioner, seeking workers' compensation benefits and penalty benefits. *See* Iowa Code §§ 86.13, .14 (1993). These claims were to be tried separately. After a hearing on the claim for compensation benefits, an agency appeal and judicial review by the district court, Squealer Feeds and Liberty Mutual were ordered to pay healing period benefits, permanent partial disability benefits and medical bills.

The parties then turned to the claim for penalty benefits. Liberty Mutual's attorney, Greg Egbers, withdrew from the case and

the company's present attorneys identified Egbers as an expert witness. Pickering requested the production of Liberty Mutual's entire claim file. Liberty Mutual produced only those portions of its file that predated its denial of Pickering's claim. Pickering's motion to compel production of the remainder of the file was granted by the deputy industrial commissioner.

Liberty Mutual filed an application to appeal to the industrial commissioner and requested a stay of the deputy's order. The industrial commissioner dismissed the application, ruling that it was an impermissible interlocutory appeal. Liberty Mutual then sought judicial review and a writ of certiorari in district court. The district court affirmed the ruling of the industrial commissioner that the appeal was interlocutory and denied the request for a writ of certiorari. This appeal followed.[1]

## II. *Scope of Review.*

■ Iowa Code chapter 17A, Iowa's administrative procedure act, governs our review of this case. *See* Iowa Code § 86.26 (1993). We review rulings of the industrial commissioner for correction of errors of law, as does the district court. *Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 14 (Iowa 1993). We may affirm, reverse, modify or grant any other appropriate relief, equitable or legal. Iowa Code § 17A.19(8) (1993). Relief may be granted when the agency's decision is "affected by [other] error of law" or is "characterized by an abuse of discretion or a clearly unwarranted exercise of discretion." *Id.* § 17A.19(8)(e), (g).

■ With respect to discovery rulings, an abuse of discretion occurs when the ruling rests on grounds or reasons clearly untenable or unreasonable. *Shook v. City of Davenport*, 497 N.W.2d 883, 885 (Iowa 1993). Additionally, if the ruling is based on an incorrect interpretation of our discovery rules, reversal is warranted. *Id.*

## III. *Availability of Judicial Review.*

■ Both the industrial commissioner and the district court refused to address the merits of the deputy's ruling on discovery, holding that the insurer's appeal was interlocutory and therefore impermissible. Upon our review of this issue, we agree that the appeal to the commissioner and district court was interlocutory, but we think it should have been permitted by the district court.[2]

Judicial review of orders of the industrial commissioner is governed by chapter 17A. Iowa Code § 86.26 (1993). Iowa Code section 17A.19(1) states in part:

A preliminary, procedural or intermediate agency action is immediately reviewable if all adequate administrative remedies have been exhausted and review of the final agency action would not provide an adequate remedy.

Under this statute, Liberty Mutual was entitled to judicial review if (1) it had exhausted all adequate administrative remedies, and (2) review of the industrial commissioner's final decision on penalty benefits would not provide an adequate remedy.

■ A. *Exhaustion requirement.* The exhaustion requirement seeks to insure an intra-agency review so that the agency will have a chance to correct its own errors. *Continental Tel. Co. v. Colton*, 348 N.W.2d 623, 626–27 (Iowa 1984). The agency was given that opportunity here when Liberty Mutual requested that the industrial commissioner review the deputy's order. Although the commissioner refused to address the merits of the deputy's order, his refusal does not mean that administrative remedies were not exhausted. Consequently, we conclude that Liberty Mutual exhausted its administrative remedies when it requested review by the commissioner and that request was de-

---

1. During the remainder of this opinion, references to Liberty Mutual as an appellant include Squealer Feeds as well.

2. Neither party argues that Liberty Mutual's appeal to the Supreme Court is interlocutory. Although further proceedings are contemplated at the agency level, the judgment of the district court was final and therefore appealable. *Barnes v. Iowa Dep't of Transp.*, 385 N.W.2d 260, 262 (Iowa 1986); *Continental Tel. Co. v. Colton*, 348 N.W.2d 623, 625 (Iowa 1984); Iowa Code § 17A.20 (1993).

nied. Therefore, it has met the first requirement for judicial review.

B. *Adequacy of appeal from final decision.* Pickering seeks to sustain the district court's ruling on the basis that Liberty Mutual has an adequate remedy that makes an interlocutory appeal unnecessary. Pickering argues that Liberty Mutual's rights can be fully protected by review of the agency's final decision awarding or denying penalty benefits. We disagree.

We have held that a litigant who can establish irreparable injury from following the normal administrative appeal process has met the requirement of showing that judicial review of final agency action is an inadequate remedy for purposes of section 17A.19(1). *Iowa Indus. Comm'r v. Davis,* 286 N.W.2d 658, 662 (Iowa 1979); *Salsbury Labs. v. Iowa Dep't of Envtl. Quality,* 276 N.W.2d 830, 837 (Iowa 1979). Here Liberty Mutual asserts it will suffer irreparable injury by divulging materials protected by the work product doctrine and the attorney-client privilege.

Although we have never considered such a claim of irreparable injury, other courts have. These courts have concluded that the production of privileged documents prior to judicial review does result in irreparable injury. *Allstate Ins. Co. v. Langston,* 627 So.2d 1178, 1179 (Fla.Dist.Ct.App.1993) (certiorari, only available to prevent irreparable injury, was granted to decide if materials fell within the work product or attorney-client privileges); *Haynes v. Anderson,* 597 So.2d 615, 620 (Miss.1992) (noting irreparable injury from production of claim file due to "the Humpty Dumpty syndrome"); *Mid–American Nat'l Bank & Trust Co. v. Cincinnati Ins. Co.,* 74 Ohio App.3d 481, 599 N.E.2d 699, 701 (1991) (allowing appeal of discovery order because release of correspondence from party's attorney could result in irreparable injury making an appeal after judgment impractical); *National Union Fire Ins. Co. v. Valdez,* 863 S.W.2d 458, 462 (Tex.1993) (holding that appeal from final judgment is inadequate where trial court has ordered the production of privileged information).

We agree with these courts. Once the documents in Liberty Mutual's claim file are produced, a later ruling that they are not discoverable would be largely ineffectual. A ruling precluding the use of these documents would not erase the memory of the contents of the documents from the minds of Pickering and his attorneys. Moreover, any advantage gained from this knowledge would be impossible to eliminate. We think the injury resulting from disclosure of privileged communications and materials is irreparable.

We are normally hesitant to allow judicial review of discovery disputes in administrative proceedings prior to final agency action. *Christensen v. Iowa Civil Rights Comm'n,* 292 N.W.2d 429, 431 (Iowa 1980). However, under the specific facts of this case, we conclude that Liberty Mutual has met the requirements of section 17A.19(1) for judicial review of an interlocutory agency decision.[3] Therefore, the district court erred in refusing to address the correctness of the deputy's decision.

■ The next question is whether we should consider the merits of Liberty Mutual's appeal or remand the case to the district court for its decision on the substantive issues. Although we are not bound to do so, we may choose to proceed with review of issues that "have been fully briefed and argued in this court, ... [when] it is in the interest of sound judicial administration to decide [those] issues here." *Barnes v. Iowa Dep't of Transp.,* 385 N.W.2d 260, 263 (Iowa 1986). Because the parties have fully briefed and argued the discovery issues on this appeal, we choose to decide those issues now.

IV. *Are Materials in an Insurer's File Postdating a Denial of Benefits Relevant?*

■ Iowa Rule of Civil Procedure 122 governs the scope of discovery in contested case proceedings before the industrial commissioner. Iowa Code § 17A.13(I) (1993) ("Discovery procedures applicable to civil actions are available to all parties in contested cases before an agency."); Iowa Admin.Code r. 343–4.35 (1994) (rules of civil procedure gov-

---

**3.** Because we conclude that judicial review of the deputy's decision is appropriate, we need not address Liberty Mutual's request for a writ of certiorari.

ern contested case proceedings before industrial commissioner). Rule 122(a) allows, with some exceptions, discovery of any matter "relevant to the subject matter involved in the pending action."

The subject matter of the action involved here is Pickering's entitlement to penalty benefits under Iowa Code section 86.13. The industrial commissioner must award penalty benefits if payment of benefits is delayed "without reasonable or probable cause or excuse." Iowa Code § 86.13 (1993). We have observed that section 86.13 is not violated if the workers' compensation insurer has a good faith dispute over the legal or factual validity of a claim for benefits. *Covia v. Robinson,* 507 N.W.2d 411, 412 (Iowa 1993). Thus, we must decide whether anything in the claim file subsequent to the denial of benefits would be relevant to these issues.

In arguing that postdenial materials are irrelevant, Liberty Mutual relies on our decision in *Brown v. Liberty Mutual Insurance Co.,* 513 N.W.2d 762 (Iowa 1994), a case involving the tort of first-party bad faith denial of workers' compensation benefits. In *Brown,* we held that a claim for bad-faith failure to pay benefits accrues when the claimant receives notice of the insurer's refusal to pay. *Brown,* 513 N.W.2d at 764. We rejected an argument that a bad-faith refusal to pay was a continuing tort. *Id.* Based on these concepts, Liberty Mutual argues that the tort is complete when the claim is denied and anything that occurs thereafter is irrelevant.

However, this argument ignores the possibility that a denial may be supportable at the time it is made but later lacks a reasonable basis in light of subsequent information. In other words, a continued delay in payment may be unreasonable even though the original denial was not. Thus, *some* of the documents in the claim file prepared after the denial may conceivably contain relevant information. *Mid–American Nat'l Bank,* 599 N.E.2d at 705.

On the other hand, we do not think that this possibility opens up the insurer's file to discovery of documents prepared on the eve of the hearing for penalty benefits. When a claimant files a claim for penalty benefits, we

presume that there is a reasonable basis in fact for the claim. *See* Iowa R.Civ.P. 80(a) (requiring certification that pleading filed "is well grounded in fact"). Either the refusal to pay is wrongful by then, or the penalty claim should not be filed. Therefore, we conclude that documents in the claim file after that date are irrelevant to the reasonableness of the insurer's conduct giving rise to the claim for penalty benefits.

In summary, any documents showing new information coming to the attention of Liberty Mutual after its denial would be relevant to whether it was reasonable for the company to persist in its denial of benefits. However, any materials prepared after the claim for penalty benefits was filed with the industrial commissioner are irrelevant and not discoverable. Thus, the deputy industrial commissioner abused his discretion (1) in ordering production of that part of the claim file prepared after Pickering filed suit for penalty benefits on August 9, 1989, and (2) in ordering production of all documents prepared between the denial of the claim and the filing of this suit without conducting an in camera review to determine which documents contain facts relevant to the reasonableness of the company's *continued* denial.

## V. *Are Documents Protected By the Attorney–Client Privilege Subject to Discovery?*

Liberty Mutual claims that the deputy erred in ordering production of documents in its file protected by the attorney-client privilege. Pickering argues that Liberty Mutual waived the privilege by designating its prior attorney as an expert witness.

■ A. *Applicability of privilege.* Iowa Rule of Civil Procedure 122(a) specifically excludes privileged materials from the scope of permissible discovery. *AgriVest Partnership v. Central Iowa Prod. Credit Ass'n,* 373 N.W.2d 479, 482 (Iowa 1985). The exemption of privileged materials from discovery is coextensive with "the rule of testimonial exclusion regarding privileged communications as developed under the applicable laws of evidence, both common-law and statutory."

*Robbins v. Iowa–Illinois Gas & Elec. Co.,* 160 N.W.2d 847, 855 (Iowa 1968).

■ Under Iowa common law, "[a]ny confidential communication between an attorney and the attorney's client is absolutely privileged from disclosure against the will of the client." *Shook,* 497 N.W.2d at 886. Additionally, Iowa Code section 622.10 (1993) bars disclosure of confidential communications "in giving testimony." *McMaster v. Board of Psychology Examiners,* 509 N.W.2d 754, 757 (Iowa 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2165, 128 L.Ed.2d 888 (1994).[4]

■ However, we have held in the context of a claim for third-party bad faith that the protection of the attorney-client privilege did not apply. In *Henke v. Iowa Home Mutual Casualty Co.,* 249 Iowa 614, 87 N.W.2d 920 (1958), the insured sued his insurance company for its alleged bad-faith failure to settle a case filed against the insured. We held that communications between an insurer and the attorney employed by the insurer to defend the insured were not privileged because the defense attorney represented the insured as well as the insurance carrier. *Henke,* 249 Iowa at 618, 87 N.W.2d at 923. Therefore, we applied the general rule that where two persons consult the same attorney for their mutual benefit, communications between the parties and their attorney are not privileged in a later action between the parties. *Id.* at 620–21, 87 N.W.2d at 923.

This reasoning does not apply to the case before us. In a first-party action, "the claimant and the insurer are in adverse positions from the outset of the underlying case." *Palmer v. Farmers Ins. Exch.,* 861 P.2d 895, 905 (Mont.1993); *accord State ex rel. Safeco Nat'l Ins. Co. v. Rauch,* 849 S.W.2d 632, 634 (Mo.Ct.App.1993). Therefore, Egbers, who represented Liberty Mutual in Pickering's claim for workers' compensation benefits, did not represent Pickering's interests as well. Because Pickering and Liberty Mutual were not joint clients of Egbers, *Henke* does not

apply and Liberty Mutual may assert the attorney-client privilege. *Aetna Casualty & Sur. Co. v. Superior Ct.,* 200 Cal.Rptr. 471, 474–75 (Ct.App.1984); *Palmer,* 861 P.2d at 906.

■ Nevertheless, the attorney-client privilege may be waived. *Miller v. Continental Ins. Co.,* 392 N.W.2d 500, 504 (Iowa 1986); Iowa Code § 622.10 (1993). Therefore, we now consider Pickering's argument that Liberty Mutual waived the attorney-client privilege by designating its former attorney as an expert witness.

**B.** *Existence of waiver.* The deputy industrial commissioner apparently believed that the designation of Liberty Mutual's prior attorney waived the attorney-client privilege. He held that the privilege did not apply. Moreover, the deputy ruled that even if Liberty Mutual withdrew its designation of the attorney as an expert, the deputy would still allow the discovery permitted by rule 125(a).

■ Waiver may be express or implied. 81 Am.Jur.2d *Witnesses* § 348, at 322–23 (1992). An express waiver occurs when a client voluntarily discloses the content of privileged communications. *Miller,* 392 N.W.2d at 504. "[A]n implied waiver occurs where the [client] has placed in issue a communication which goes to the heart of the claim in controversy." 81 Am.Jur.2d *Witnesses* § 348, at 323 (1992); *cf.* Iowa Code § 622.10 (1993) (health care professional-patient privilege not applicable in a civil action where patient's condition is an issue). Any waiver is limited to attorney-client communications on the matter disclosed or at issue. *Miller,* 392 N.W.2d at 504–05.

■ We do not think that an express waiver has occurred here because at this point no privileged communications have been disclosed. Nevertheless, we conclude that Liberty Mutual's designation of Egbers as an expert witness does constitute an implied waiver. That is so because Liberty

---

4. Our decision in *McMaster* ordering production of documents subject to the mental health professional-patient privilege does not govern our decision here. In that case, a special statute gave the board of psychology examiners the power to compel production of privileged records. *McMaster,* 509 N.W.2d at 757 (relying on Iowa Code section 258A.6 (1991)). No such statute assists the claimant here.

Mutual plans to offer Egber's opinion on the matters identified in its designation of him as an expert witness. *Cf. State v. Cole,* 295 N.W.2d 29, 35 (Iowa 1980) ("We believe the defense of diminished capacity waived the privilege here, even if it had existed, for the simple reason it would be incongruous to allow a party to put a matter in issue and then deny access of an opposing party to relevant information concerning it."); *State v. Bastedo,* 253 Iowa 103, 112, 111 N.W.2d 255, 260 (1961) (waiver of attorney-client privilege where breach of duty by lawyer to client is an issue).

Contrary to the deputy's ruling, our finding of waiver rests not on the fact that Egbers has at one time been designated an expert witness but on the fact that he is currently designated as an expert who will be called at trial. In other words, a withdrawal of the expert witness designation prior to the disclosure of any confidential communications would also constitute a withdrawal of the implied waiver. 81 Am.Jur.2d *Witnesses* § 294, at 281 (1992) ("the waiver of a privileged communication may be withdrawn at any time before it has been acted on, where no advantage has accrued to either litigant on account thereof"); *cf. Mantolete v. Bolger,* 96 F.R.D. 179, 182 n. 2 (D.Ariz.1982) (party may change the status of an expert from expert who will testify to non-witness expert even solely to avoid discovery); *County of Los Angeles v. Superior Ct.,* 222 Cal.App.3d 647, 656–58, 271 Cal.Rptr. 698, 703–04 (1990) (party could withdraw expert and thereby reestablish attorney work product privilege, notwithstanding claim that withdrawal was prompted by desire to suppress evidence); *Nelson Drainage Dist. v. Bay,* 188 Mich.App. 501, 470 N.W.2d 449, 452 (1991) (designation of expert may be withdrawn and discovery of that expert is then governed by more limited standards applying to nontestimonial expert witness). We express no opinion on what discovery, if any, would be allowable if Liberty Mutual withdraws its expert witness des-

ignation, other than to state that such a withdrawal would reestablish the attorney-client privilege if no express waiver has yet occurred.[5] *See* Iowa R.Civ.P. 125(b) (allowing discovery of expert who will not be called as a witness upon showing of exceptional circumstances).

Because Liberty Mutual has waived the attorney-client privilege to the extent expert witness discovery is permitted under rule 125(a), we examine the scope of discovery allowed by that rule. Rule 125(a) requires that the proponent of an expert witness disclose the "mental impressions and opinions held by the expert and the facts known to the expert (regardless of when the factual information was acquired) which relate to, or form the basis of" the expert's impressions or opinions. Liberty Mutual argues that Egbers will rely only on the information available to the company at the time it denied Pickering's claim and therefore, any information in the postdenial file is not discoverable. However, rule 125(a) requires disclosure of all facts *known* to the expert and which relate to his opinions, not just the facts which form the basis for the expert's opinion. Therefore, if the postdenial file contains facts relevant to the reasonableness of Liberty Mutual's denial and if these facts were made known to Egbers, *at any time,* those facts are discoverable. Furthermore, the documents containing these facts are discoverable under rule 125(a)(2) which allows discovery by means in lieu of or in addition to interrogatories, including the production of documents.

## VI. *Are Documents Protected By the Work Product Doctrine Subject to Discovery?*

The final issue presented by the deputy's order compelling production of Liberty Mutual's claim file arises from the work product doctrine contained in Iowa Rule of Civil Pro-

---

**5.** There is some indication in the record that after this appeal was taken Liberty Mutual filed a withdrawal of its designation of Egbers as an expert witness. That fact was not before the deputy industrial commissioner or the district court nor was there a request to supplement the appellate record under Iowa Rule of Appellate

Procedure 10(d). Therefore, we do not consider that fact. *See* Iowa R.App.P. 10(a) (record on appeal consists of "[t]he original papers and exhibits *filed in the trial court,* the transcript of proceedings, if any, and a certified copy of the docket and court calendar entries") (emphasis added).

cedure 122(c). Rule 122(c) gives a qualified immunity from discovery to any documents or tangible things "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." *Shook,* 497 N.W.2d at 886 (quoting Iowa R.Civ.P. 122(c)). Pickering does not dispute that the claim file was prepared in anticipation of litigation and contains protected work product. However, he contends that he has made a sufficient showing to overcome this qualified privilege.

 The work product privilege may be defeated only upon a showing that the party seeking discovery (1) has substantial need of the materials in the preparation of the case, and (2) is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Iowa R.Civ.P. 122(c). In determining whether a sufficient showing has been made in other contexts, we have required the party requesting the documents to make an independent discovery effort to obtain equivalent information. *Shook,* 497 N.W.2d at 888; *Schaffer v. Rogers,* 362

N.W.2d 552, 556–57 (Iowa 1985). A mere allegation that the witnesses with equivalent information may be hostile is not a sufficient showing. *Schaffer,* 362 N.W.2d at 556. The party must interview or depose the witnesses so that any claim of hostility or faulty memory can be substantiated. *Shook,* 497 N.W.2d at 888; *Schaffer,* 362 N.W.2d at 556.

Here Pickering has not demonstrated any unsuccessful independent effort to obtain the substantial equivalent of the discoverable information in the claim file. Rather, Pickering argues that there is no substantial equivalent to the claim file in the context of a penalty benefits claim. He argues that an insurer's files are unique and that under our prior cases we have summarily concluded that the claimant has a substantial need for such files.

We think Pickering reads too much into our cases because we have never squarely addressed the discoverability of an insurer's file compiled *after* the insured's claim has been denied.[6] There may well be a substan-

---

6. In *Henke,* we rejected the insurer's argument that documents in the claim file were protected by the work product privilege. *Henke v. Iowa Home Mut. Casualty Co.,* 249 Iowa 614, 624, 87 N.W.2d 920, 927 (1958). We said that the work product doctrine did not apply because the materials were prepared in a different action when one attorney represented *both* the insurer and the insured. *Id.* We distinguished the situation from one where the parties were adversaries:

> [The work product privilege] applies in an action between two adverse parties whose separate counsels have each made investigations in respect to that action which they intend to use in the adversary proceeding between the two. [The insurer's file here was] not in that classification because at the time the papers demanded were prepared, the parties were not adverse to each other but were working together in a common defense.

*Id.* Although we also observed that "the material appears to be in the category which would justify a court in requiring disclosure" even if the work product rule applied, we found a decision on that issue unnecessary. *Id.*

Thirteen years later, in *Amsden v. Grinnell Mutual Reinsurance Co.,* 203 N.W.2d 252, 253 (Iowa 1972), we relied on the *Henke* decision in holding that internal documents of the insurer were discoverable in a suit by an insured against his fire insurer. The *Amsden* case, however, was not a *third-party* bad faith case like *Henke.* Rather, *Amsden* involved an action for intentional infliction of emotional distress based on the in-

surer's failure to promptly pay its own insured's fire loss claim. *Id.* We did not discuss any limitations on the applicability of the *Henke* rationale to cases involving first-party claims where the insured and the insurer were adversaries from the beginning. *See generally Agri–Business, Inc. v. Bridges,* 397 So.2d 394, 395 (Fla. Dist.Ct.App.1981) (holding that different relationships exist between insurer and insured in first-party and third-party situations, warranting greater protection of work product in first-party cases); *Palmer v. Farmers Ins. Exch.,* 261 Mont. 91, 861 P.2d 895, 905–06 (1993) (recognizing distinction between first-party and third-party bad faith cases in determining greater protection from discovery afforded by the attorney-client privilege in first-party cases). More importantly, there is no indication in the *Amsden* decision that the materials sought were prepared *after* the denial of the insured's claim.

In *Miller v. Continental Insurance Co.,* 392 N.W.2d 500 (Iowa 1986), we allowed discovery of an insurer's file in a suit brought by the injured party against the tortfeasor's insurance company for intentional infliction of emotional distress. Again, however, there is no indication that the discovery sought covered the period after the insurer refused to make any payment on behalf of its insured.

Pickering relies on a 1991 case decided by our court to support his position that an insurer's claim file is automatically discoverable upon request in a bad faith suit. *See Handley v. Farm Bureau Mut. Ins. Co.,* 467 N.W.2d 247 (Iowa

tial need for that part of the file predating the denial. Those documents are unique in that they are a contemporaneous recording of the insurer's investigation and reasoning leading to the denial. *Tackett v. State Farm Fire & Casualty Ins. Co.*, 653 A.2d 254, 263 (Del.1995); *APL Corp. v. Aetna Casualty & Sur. Co.*, 91 F.R.D. 10, 14 (D.Md.1980). However, the uniqueness of the insurer's file is not so apparent once the insured's claim has been denied. *See Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos.*, 123 F.R.D. 198, 204 (M.D.N.C.1988) (refusing to order production of postdenial documents in claim file because predenial materials "should constitute all of the information sufficient for plaintiff to prove its claim"). Anything in the file after that decision has been made is no different from the file of any other adversary who begins to document and analyze his position in anticipation that he may be sued. In the case of any other party, we require the showing discussed above and set forth in *Shook.* We see no reason that the insurer's file prepared after the claim has been denied should be treated any differently. *Kujawa v. Manhattan Nat'l Life Ins. Co.*, 541 So.2d 1168, 1169 (Fla.1989) (holding that insurer in first-party bad faith action is "entitled to the [attorney-client] privilege and [work product] immunity to the same extent as any other litigant").

As noted earlier, we need not decide whether Liberty Mutual's file postdating the denial was prepared in anticipation of litigation. Pickering concedes as much. Nevertheless, it is valuable to remind ourselves why the work product privilege was established in the first place to fully appreciate the unfairness of automatically subjecting the entire file of the insurer to discovery whenever the insured sues for bad faith.

The seminal Iowa case analyzing the work product privilege as it applies to an insurer's files is *Ashmead v. Harris*, 336 N.W.2d 197 (Iowa 1983). *Ashmead* was an action for damages sustained in an automobile accident. *Ashmead*, 336 N.W.2d at 198. The plaintiff wanted to discover the files of the defendant's insurance company. *Id.* The only issue presented was whether the documents were gathered in anticipation of litigation. *Id.* at 199. In fashioning a test for when documents are prepared in anticipation of litigation, we looked to the comments of the federal advisory committee on the federal counterpart to rule 122(c):

> [T]he requirement of a special showing for discovery of trial preparation materials reflects the view that each side's informal evaluation of its case should be protected, that each side should be encouraged to prepare independently, and that one side *should not automatically* have the benefit of the detailed preparatory work of the other side.

*Id.* at 200 (quoting 48 F.R.D. 487, 501) (emphasis added). We decided that if the "primary motivating purpose" in preparing the documents is to "aid in possible future litigation," the documents are prepared in anticipation of litigation.[7] *Id.* at 201.

---

1991). However, the only issue before the court in *Handley* was whether the district court must stay discovery of an insurer's files until there has been a showing of a prima facie case of bad faith. *Id.* at 250. The scope of the discovery itself was not contested.

In *Johnson v. State Farm Automobile Insurance Co.*, 504 N.W.2d 135 (Iowa Ct.App.1993), State Farm's insured sued the company for underinsured motorists (UIM) benefits and for bad faith. As in the present case, the claims were severed and the claim for benefits was tried first. During the case for UIM benefits, the insured sought to discover State Farm's file. *Johnson*, 504 N.W.2d at 136–37. The district court examined the file in camera and determined that the documents were prepared in anticipation of litigation and not discoverable. *Id.* at 137. The Iowa Court of Appeals affirmed, noting that there had been no showing of substantial need and therefore the file

was not discoverable "at least during the underinsured motorist portion of the suit." *Id.* The court did not decide whether the file would be discoverable in the subsequent bad faith case. *Id.*

7. The file in *Ashmead* contained the liability insurer's routine investigation of an accident involving its insured. *Ashmead*, 336 N.W.2d at 201. We held that the file was prepared in anticipation of litigation because the primary purpose of the investigation was to prepare to defend a third-party claim. *Id.* We observed that investigations initiated to adjust the insured's own loss were distinguishable. *Id.* We said, "We need not decide what test should be applied for determining when a routine investigation of an insured's claim becomes an investigation in anticipation of litigation with the insured or with a third party." *Id.* Nor must we

In a later case, not involving an insurer's files, we again found it helpful to focus on the purpose of the work product privilege in deciding its scope:

> "The primary purpose of the work product privilege is to assure that an attorney is not inhibited in his representation of his client by the fear that his files will be open to scrutiny upon demand of an opposing party. Counsel should be allowed to amass data and commit his opinions and thought processes to writing free of the concern that, at some later date, an opposing party may be entitled to secure any relevant work product documents *merely on request* and use them against his client."

*Shook*, 497 N.W.2d at 888 (quoting *In re Murphy*, 560 F.2d 326, 334 (8th Cir.1977)) (emphasis added). Of course, the protection of work product given by rule 122(c) extends to documents prepared by a party or any representative of the party, as well as by the party's attorney. Iowa R.Civ.P. 122(c); *accord* 4 Moore's Federal Practice ¶ 26.64[3], at 26–416 (1979).

Keeping in mind the purpose and scope of the work product privilege, we conclude that a claimant is not entitled to obtain the file of his adversary, the insurer, merely upon request. *See State Farm Mut. Auto. Ins. Co. v. LaForet*, 591 So.2d 1143, 1144 (Fla.Dist.Ct.App.1992) (court denied production of claim file in a first-party bad faith case stating, "A 'showing' is more than a bare assertion; it consists of specific explanations and reasons."); *Broussard v. State Farm Mut. Auto. Ins. Co.*, 519 So.2d 136, 136 (La.1988) (insured seeking claim file in first-party bad faith case must make showing required by rule for production of work product materials); *Rauch*, 849 S.W.2d at 634–35 (because insurer and insured are adversaries whenever insured makes a claim for payment under a policy, insured must show substantial need and inability to obtain substantial equivalent without undue hardship). Documents prepared *after* the insured's claim has been denied are clearly not a contemporane-

ous record of events leading to the denial of the insured's claim. After the claim has been denied, the insurer evaluates its action and prepares to defend its decision. Documents prepared during that time are precisely the type of material sought to be protected from discovery by one's adversary. We think an insurer is entitled to the same protection of this material under rule 122(c) as any other party.

But, Pickering argues, these documents may contain relevant information, information that will advance his case. Of course that argument could be made by Liberty Mutual with respect to the file of Pickering's attorney just as easily. More to the point, relevancy is not the standard for determining whether work product is discoverable. *See State Farm Fire & Casualty Co. v. Von Hohenberg*, 595 So.2d 303, 304 (Fla.Dist. Ct.App.1992) (holding that even if the material sought is relevant, it may be privileged and beyond permissible discovery; party seeking discovery must meet substantial need/undue hardship test). The fact remains that Liberty Mutual's file compiled after the denial of Pickering's claim is no different and entitled to no less protection than the file of Pickering and his attorney prepared during the same time frame. An insurer, no less than any other party, should be able to prepare its case " 'free of concern that, at some later date, an opposing party may be entitled to secure any relevant work product documents merely on request.' " *See Shook*, 497 N.W.2d at 888 (quoting *In re Murphy*, 560 F.2d at 334).

We hold that Pickering could not rely on a mere allegation that he has substantial need of Liberty Mutual's file and cannot, without undue hardship, obtain the substantial equivalent. He had to demonstrate that the information contained in the documents prepared after his claim was denied could not be obtained through a review of the predenial documents already produced by Liberty Mutual, the depositions of the persons responsible for making the denial decision or any other source.[8]

---

decide that issue here. The parties apparently agree that litigation was anticipated no later than the date Pickering's claim was denied.

8. Our holding on the work product privilege does not affect our conclusions concerning discovery of expert materials under rule 125(a). The sub-

In making this demonstration of need, a claimant must focus on the availability from other sources of the *facts* necessary to establish his claim for penalty benefits. Whether any opinions, conclusions and mental impressions concerning that claim are included in the postdenial file and cannot be obtained elsewhere is not important. That is because in no event are the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation" discoverable.[9] *APL Corp.*, 91 F.R.D. at 14; *Shook*, 497 N.W.2d at 886. Those materials are absolutely immune. *Shook*, 497 N.W.2d at 886. Consequently, the fact that the postdenial file may contain such information is irrelevant to an analysis of the claimant's need for the documents.

Because Pickering did not make the showing required by rule 122(c), the deputy industrial commissioner abused his discretion in ordering the production of the claim file postdating Liberty Mutual's denial of Pickering's claim.

### VII. *Summary.*

The district court erred in refusing to review the order of the deputy industrial commissioner requiring the production of documents protected by the attorney-client and work product privileges.

The deputy industrial commissioner abused his discretion in ordering the production of the entire file of Liberty Mutual prepared after Pickering's claim was denied. Any documents in the file prepared after the claim for penalty benefits was filed are irrelevant and not discoverable, unless those documents are relevant and discoverable under rule 125(a).

The deputy also abused his discretion in allowing discovery of documents compiled after Pickering's claim for workers' compensation benefits was denied without a showing of substantial need and undue hardship as required by rule 122(c). Because no such showing was made, Pickering is not entitled to discover any documents in the file prepared after the date of denial, unless such discovery is permitted under rule 125(a).

Although communications between Liberty Mutual and its attorneys are absolutely privileged, Liberty Mutual waived the attorney-client privilege as to Egbers by designating him as an expert witness. However, the deputy industrial commissioner abused his discretion in concluding that this waiver made Liberty Mutual's entire file subject to discovery. On remand, the deputy industrial commissioner should review Liberty Mutual's claim file to decide whether any of the documents (1) contain mental impressions or opinions of Egbers concerning the reasonableness of Liberty Mutual's denial or (2) contain facts made known to Egbers that relate to the reasonableness of the denial. Any such documents must be produced with the following qualification. The discovery permitted by rule 125(a) does not require the production of the entirety of each document if that document contains information that does not fall within the two categories listed above. In that event, Liberty Mutual may redact the material not subject to discovery.

**REVERSED AND REMANDED.**

stantial need/undue hardship standard of rule 122(c) does not apply to discovery under rule 125(a). *Sullivan v. Chicago & N.W. Transp. Co.*, 326 N.W.2d 320, 328 (Iowa 1982).

9. We need not decide whether an exception should be made to this rule of immunity where the mental impressions and opinions of the insurer are at issue. *See, e.g., Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir.1992) (holding that opinion work product was discoverable in a third-party bad faith case where mental impressions were at issue and the need for the material was compelling); *Tackett v. State Farm Fire & Casualty Ins. Co.*, 653 A.2d 254, 262 (Del.1995) (holding opinion work product discoverable in first-party bad faith case under pivotal issue/compelling need standard; file "reflects a unique, contemporaneous record of the handling of the claim"). That is because all the predenial documents which would include any contemporaneous recording of the insurer's employees' opinions and mental impressions have been produced. We think any after-the-fact statements of opinion and analysis contained in the postdenial file are protected from discovery. What the insurer thinks about the insured's claim after the claim has been denied and litigation is anticipated is not at issue and therefore not within the at-issue exception recognized by some courts.

All justices concur except HARRIS and NEUMAN, JJ., who take no part.