**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0613n.06

**Nos. 10-1008, 10-1071**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| HARRY PARTRICH; RICHARD G. PARTRICH, as the personal representative of the Estate of Harry Partrich, | ) ) ) | **FILED**<br><br>***Aug 24, 2011***<br><br>LEONARD GREEN, Clerk |
| | ) | |
| Plaintiffs-Appellants/Cross-Appellees, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DONNA FARBER, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee, | ) | |
| | ) | |
| STEVEN SOFFERIN, | ) | |
| | ) | |
| Defendant-Appellee/Cross-Appellant. | ) | |

Before: BOGGS, GILMAN, and COOK, Circuit Judges.

COOK, Circuit Judge. After prevailing in a nasty probate dispute, Harry Partrich sued his stepchildren (the "children") for malicious prosecution and abuse of process. The district court dismissed the malicious-prosecution claim for failure to plead special injury and later granted the children summary judgment on the abuse-of-process claim. We affirm.

I.

Joan Partrich died intestate. At the time of her death, she and her husband, Harry Partrich, jointly owned a right-of-survivorship bank account with a balance of about $350,000. After Joan died, Partrich fought extensively with Joan's children, Donna Farber and Steven Sofferin, over how to divide Joan's property, with Partrich insisting that the children had no right to a monetary inheritance.

After Joan's funeral, Farber and Sofferin petitioned to probate Joan's estate. They initially did not challenge Partrich's interest in the estate, but instead represented that they intended to pursue a medical-malpractice claim against Joan's doctors. Partrich forwarded Joan's medical records to the children, who never did file a malpractice suit.

Partrich eventually asked the probate court to close the estate. This prompted the children to issue Partrich an ultimatum: either he pay them $175,000 or they would object to closing the estate on the ground that the estate had a wrongful-death claim against him because he withheld medical care near the end of Joan's life. When Partrich refused to pay them, the children filed their objections.

Partrich's refusal did not dissuade the children. They reiterated their demand for $175,000 and advised Partrich that if the parties could not negotiate a settlement, they would petition the court to revoke his interest in Joan's estate, pursuant to Michigan's slayer statute, on the theory that he killed her by withholding medical care. Partrich again refused; the children again followed through, this time filing a Petition to Revoke Benefits.

The probate court, unimpressed by the children's slayer-statute allegation, dismissed their objections and their Petition to Revoke Benefits; sanctioned Farber, Sofferin, and their attorney for failing to conduct a reasonable inquiry into existing law before invoking the slayer statute; and closed Joan's estate.

Partrich, humiliated, sued Farber and Sofferin for malicious prosecution and abuse of process. The district court dismissed the malicious-prosecution claim and later granted the children summary judgment on the abuse-of-process claim. Patrich appeals both losses; Sofferin appeals the denial of his motion to dismiss the latter claim.

II.

A.

We review de novo the dismissal of Partrich's malicious-prosecution claim under Federal Rule of Civil Procedure 12(b)(6), *see Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 384 (6th Cir. 2009), asking whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citation omitted).

For a malicious-prosecution claim to survive a motion to dismiss, a plaintiff must allege, among other things, special injury. *Friedman v. Dozorc*, 312 N.W.2d 585, 600 (Mich. 1981). The district court held that Partrich failed to plead special injury, and we agree.

The Michigan courts recognize three types of special injury: injury to fame, to property, and to person or liberty. *See, e.g.*, *Barnard v. Hartman*, 344 N.W.2d 53, 54 (Mich. Ct. App. 1983). Partrich contends that his allegations satisfy the first and second types. His complaint alleges that the children's slayer-statute objection (1) damaged his personal reputation and (2) interfered with his property rights in his wife's estate. Partrich's alleged "injuries," however, do not suffice.

1.

Partrich first asserts that the children, by filing the slayer-statute objection, injured his personal reputation because they accused him of murdering his wife.

Injury to fame or reputation satisfies the special-injury requirement only if it constitutes "unusual hardship," which means that "the injury is of a kind not ordinarily resulting from similar causes." *Id.* (internal quotation marks and citation omitted). For example, a court reporter suffered no unusual hardship when she was accused of intentionally preparing a false and misleading transcript because that type of allegation would ordinarily mar a court reporter's reputation. *Id.* at 53–55.

So, too, here. Partrich's alleged injury—damage to his personal reputation when the children falsely accused him of murdering his wife—is the kind that normally flows from a slayer-statute allegation because Michigan's law divests a joint tenant of his right of survivorship only when he "felonious[ly] and intentional[ly]" kills the deceased. *See* Mich. Comp. Laws § 700.2803(2)(b). In

addition, the probate court remedied any reputational damage when it overruled the children's objections, dismissed their Petition to Revoke Benefits, and imposed sanctions. *See Barnard*, 344 N.W.2d at 54 ("When the action is tried in public, [plaintiff's] fair fame will be cleared, if it deserves to be cleared . . . ." (internal quotation marks and citation omitted)).

Partrich attempts to distinguish his case on two grounds, but to no avail. He first contends that, unlike *Barnard*'s court reporter, he suffered damage to his personal, rather than professional, reputation. But this distinction misses the point: Partrich alleges an injury that *ordinarily results* when a party invokes the slayer statute, thus removing it from the special-injury category. *See id.*

Second, Partrich claims that the scandalous nature of the children's accusation elevates his injury to an unusual hardship. This argument rests entirely upon one historical observation by the Michigan Supreme Court: that in England, in 1698, "injury to one's fame (as by a scandalous allegation)" would support a malicious-prosecution action. *Friedman*, 312 N.W.2d at 596. Unfortunately, neither *Friedman* nor any other case elaborates on this scandalous-allegation statement or explains what constitutes a sufficiently scandalous allegation. Yet nothing that Partrich cites allows him to circumvent the requirement that he allege an injury "not ordinarily resulting from similar causes," *Barnard*, 344 N.W.2d at 54 (internal quotation marks and citation omitted)—which he fails to do.

2.

Partrich next asserts that the children constructively seized his property when they invoked the slayer statute because "[he] was legally barred from alienating" the money in the bank account until the probate court fully adjudicated the children's claim.

A "technical or constructive seizure of property" satisfies Michigan's special-injury requirement. *Friedman*, 312 N.W.2d at 597. In *Brand v. Hinchman*, for example, the court found a "technical taking and possession"—and thus a special injury—where officers entered a store to execute a writ of attachment on the merchant's goods and prevented the merchant from selling anything in his store. 36 N.W. 664, 667 (Mich. 1888). In contrast, no special injury exists if the defendant's use of civil proceedings does not cause any limitation on alienation. *See Kauffman v. Shefman*, 426 N.W.2d 819, 822–23 (Mich. Ct. App. 1988) (holding that the filing of a lis pendens causes no special injury because the owner may still convey the property).

Contrary to Partrich's assertions, the children's slayer-statute allegation did not lead to a "technical taking" of his property because nothing prevented him from spending—i.e., alienating—Joan's share of the $350,000. When Joan died, her interest in the couple's joint-tenancy account devolved to Partrich, entitling him to all the money in the account. *See* Mich. Comp. Laws §§ 700.1105(e), 700.6101(1)(c). Though the children later advocated for severing the joint tenancy, *see id.* § 700.2803(2)(b), they did not ask the court to prevent Partrich from using the money while they litigated the slayer-statute claim. Because no temporary injunction prohibited alienation of the funds,

Partrich instead claims that the children's mere allegation of murder legally barred any use. But he cites no authority supporting his position. Moreover, the slayer statute itself suggests just the opposite: even if the probate court had found him a killer, Partrich could have validly transferred the money—before or after the court declared the severance—to anyone who relied in good faith on his *apparent* title by survivorship. *See id.* § 700.2803(3). Nothing, therefore, prohibited him from spending the money during the pendency of the probate proceedings.

B.

We also review de novo the district court's grant of summary judgment to the children on the abuse-of-process claim. *See Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011). We must affirm if, viewing the facts in Partrich's favor, *see id.*, the children "show[ed] that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law," *see* Fed. R. Civ. P. 56(a).

To recover on an abuse-of-process claim, a plaintiff must show "(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman*, 312 N.W.2d at 594. The district court, finding the children's settlement demands consistent with the regular use of probate proceedings, held that Partrich failed to establish the second element: an improper use of process. We agree.

A settlement offer becomes an improper use of process where the offer seeks "more than objectives commonly sought by claimants who initiate [similar] lawsuits." *Young v. Motor City Apartments Ltd. Dividend Hous. Ass'n No. 1 & No. 2*, 350 N.W.2d 790, 795 (Mich. Ct. App. 1984). In such a case, a claimant's demand perverts the regular process because his or her true objective is merely "collateral to [the suit's] proper purpose." *Three Lakes Ass'n v. Whiting*, 255 N.W.2d 686, 690–91 (Mich. Ct. App. 1977). In *Three Lakes*, for example, a corporation sought tort damages from a nonprofit for obstructing the corporation's condo project. *Id.* at 687–88. The corporation offered to drop the suit if the nonprofit ended all of its opposition to the project, both legal and illegal. *Id.* at 690. When the nonprofit later sued the corporation for abuse of process, the court found the settlement demand collateral to the purpose of the tort suit—and thus to be an improper use of process—because the corporation asked the nonprofit to end even *legal* opposition to the project. *Id.* at 690–91.

Here, in contrast to *Three Lakes*, the children's settlement offer fully comports with the relief they sought through probate. If the children's slayer-statute allegation had succeeded, Joan's estate would have passed to them as her intestate heirs. *See* Mich. Comp. Laws § 700.2103(a). And the children's settlement demand—$175,000—roughly equates to the value of that estate. Their offer thus "depict[s] nothing inconsistent with the zealous representation of claims that is inherent in our adversary system." *Young*, 350 N.W.2d at 795.

Partrich nevertheless contends that the probate court's inability to award the children cash renders their settlement demand collateral to the proper purpose of their objections and the Petition to Revoke Benefits—i.e., an order declaring him a "killer" and instructing him to transfer the assets to Joan's estate. But this argument elevates form over substance. Joan's estate consisted primarily of cash; the children demanded a sum roughly equivalent to the value of the estate that they would have received had the slayer statute applied; and a settlement would have relieved all parties of the need to litigate the slayer-statute claim and other objections.

Partrich thus identifies nothing unusual, irregular, or improper about this process—except to label the slayer-statute allegation "frivolous" and "unfounded." The filing of a groundless or baseless claim, however, does not rise to the level of abuse of process. *See Early Detection Ctr., P.C. v. N.Y. Life Ins. Co.*, 403 N.W.2d 830, 835 (Mich. Ct. App. 1986) (per curiam).

Finally, Partrich argues that the children abused process merely by opening the probate proceedings because they lied about their intentions. We, like the district court, decline to consider this argument. Partrich *twice* advanced the same argument below—and the court *twice* passed over it, noting his failure to allege in his complaint that the children's initiation of probate proceedings, standing alone, constituted an improper act. In addition, despite the court advising him of its unwillingness to consider his newly asserted theory, Partrich never moved to amend his complaint. *See* Fed. R. Civ. P. 15. Under these circumstances, we see no reason to rule on this theory now. *See*

*Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 554–55 (6th Cir. 1998) (en banc) ("Typically, we will not address issues unless ruled upon by the trial court below.").

The district court having properly granted the children summary judgment, we need not address Sofferin's cross-appeal of the denial of his motion to dismiss this claim.

III.

For these reasons, we affirm the district court's judgment.