# IN THE COURT OF APPEALS OF IOWA

No. 16-1134
Filed December 20, 2017

**B&F JACOBSON LUMBER & HARDWARE, L.L.P.,**
    Plaintiff-Appellant,

**vs.**

**ACUITY, A Mutual Insurance Company,**
    Defendant-Appellee.

_____

Appeal from the Iowa District Court for Monona County, Jeffrey L. Poulson, Judge.

B&F Jacobson Lumber & Hardware, L.L.P. appeals from a jury verdict in favor of Acuity, A Mutual Insurance Company, on B&F's claim for bad faith in the adjustment of a property-damage claim. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Bruce Stoltze of Stoltze & Stoltze, P.L.C., Des Moines, Travis J. Burk of Hope Law Firm, P.L.C., and Jeffrey S. Carter of Jeff Carter Law Office, P.C., Des Moines, for appellant.

Dustin T. Zeschke and Stephen J. Powell of Swisher & Cohrt, P.L.C., Waterloo, for appellee.

Heard by Danilson, C.J., and Doyle and Mullins, JJ.

**DANILSON, Chief Judge**

B&F Jacobson Lumber & Hardware, L.L.P. (B&F) appeals from a jury verdict in favor of Acuity, A Mutual Insurance Company (Acuity), on B&F's claim for bad faith in the adjustment of a property-damage claim. B&F contends the district court improperly (1) denied B&F's motion to compel evidence of post-filing-of-litigation claim adjustment decisions on the basis it is protected by the attorney-client privilege, (2) determined other evidence of post-filing-of-litigation conduct was inadmissible, and (3) precluded B&F from presenting evidence as to damages for loss of peace of mind. We conclude the district court abused its discretion in denying B&F's motion to compel and in making a blanket decision that all evidence of post-filing-of-litigation conduct was inadmissible. The court also erred in denying the admission of two damage estimates. We reverse and remand for further proceedings and a new trial. We affirm the court's ruling that B&F may not present evidence as to loss of peace of mind or prejudgment interest.

**I. Background Facts & Proceedings.**

This matter arose on April 9, 2011, when a tornado caused significant damage to the two buildings located on B&F's business premises in Mapleton, Iowa. B&F's insurer, Acuity, sent an adjuster, Brad Werger, to Mapleton on April 12, 2011, to assess the damage. On April 13, the owner of B&F, Bruce Jacobson, discussed the damage estimate with Werger and signed the proof of loss. A check was issued to B&F in the amount of $60,464.75 for the actual cash value of loss to B&F's buildings. The check included a notation stating, "Settlement in Full-ACV."

Jacobson later realized the damage was more extensive and could not be remedied with only $60,464.75. In August 2011, Jacobson hired a public adjuster, James Pierce, to review the claim including the damages. While working together on an unrelated claim in February 2012, Pierce mentioned to Werger that he had been hired by B&F to serve as its public adjuster. In his second affidavit, Werger explained, "We had a conversation in which Mr. Pierce stated it appeared we would be working another claim together, the lumber yard claim. I believed Mr. Pierce was mistaken and informed him that the claim had been settled back in April of 2011." Pierce again contacted Werger by email on August 6, 2012, stating, "I have another possible claim with you. The B[&]F Jacobs[o]n lumber yard. You and I had talked about it previously and you had mentioned that the client signed off on something. Could you send me that form please at your convenience." Werger replied, "On vacation until the 13th. Policyholders release so we are not opening up the claim. I can send when I get back."

After the email exchange, B&F filed its petition on August 17, 2012, asserting claims for breach of contract, unjust enrichment, reasonable expectations, bad faith, and seeking punitive damages. On October 23, 2012, counsel for B&F made a written request for appraisal[1] as permitted by B&F's

---

[1] Our supreme court has explained:

> An appraisal is a supplementary arrangement to arrive at a resolution of a dispute without a formal lawsuit. Provisions for appraisal of an insurance loss, whether under policy terms or pursuant to independent agreement, are valid and binding on the parties. 6 J. Appleman & J. Appleman, *Insurance Law and Practice* §§ 3921, 3924 (rev. 1972). Appraisal awards do not provide a formal judgment and may be set aside by a court. When reviewed, the award is supported by every

insurance policy if the parties "disagree on the value of the property or the amount of the loss." Counsel for Acuity replied and refused appraisal. Acuity filed both a motion for summary judgment and a motion to stay discovery and appraisal requests on January 11, 2013. B&F filed a motion to compel appraisal on February 7. The district court granted the motion for summary judgment in May 2013 but did not address the motion to stay or the motion to compel appraisal. B&F appealed. *See B&F Jacobsen Lumber & Hardware, L.L.P. v. Acuity*, No. 13-0952, 2014 WL 1714968, at *1 (Iowa Ct. App. Apr. 30, 2014). On appeal, this court concluded questions of fact existed as to a number of issues raised regarding the notice provision and the bad-faith claim, reversed the summary-judgment ruling, and remanded the case back to the district court. *Id.* at *9-10.

On August 5, 2014, B&F filed a second motion to compel appraisal, which Acuity again resisted. The court entered an order compelling appraisal on October 13. The appraisal was completed on February 17, 2015, resulting in an award requiring Acuity to pay B&F an additional $83,000 in damages. After the appraisal was complete and payment was made, only B&F's bad-faith claim remained.

On June 4, 2015, a deposition was taken of Acuity's property-claims manager, Marty Jaeger. During the deposition, Acuity's counsel asserted attorney-client privilege in declining to allow Jaeger to answer a number of questions respecting Acuity's reliance on the "settled in full" language on the

reasonable presumption and will be sustained even if the court disagrees with the result.
*Central Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 466 N.W.2d 257, 260 (Iowa 1991).

check and the reasoning for its decision to refuse B&F's requests for additional payment and appraisal after the litigation was commenced. Acuity's counsel stated any decision made after the filing of the petition was on advice of counsel and maintained the reasoning for Acuity's decisions was therefore protected by attorney-client privilege.

On October 12, 2015, B&F filed a third motion to compel. The third motion requested an order to compel Jaeger to answer the questions avoided during his deposition. On November 19, pursuant to Iowa Rule of Evidence 5.104(a), Acuity filed a motion to determine the admissibility of evidence requesting that the court determine certain evidence inadmissible at trial including evidence of post-filing-of-litigation conduct and evidence as to emotional damages or—as B&F described it—loss of peace of mind from the purchase of property insurance. The court entered an order ruling on both the motion to compel and the motion to determine admissibility of evidence on February 5, 2016. The court held counsel for Acuity's assertion of attorney-client privilege during Jaeger's deposition was proper, and denied B&F's motion to compel. The court also determined evidence of Acuity's post-filing-of-litigation actions were not admissible.

On March 4, B&F filed a motion regarding emotional-distress damages for bad faith, asserting B&F was not claiming damages for emotional distress and requesting B&F be permitted to seek damages for loss of peace of mind. The court held B&F, being a limited liability partnership, could not experience a loss of peace of mind, and thus evidence as to loss of peace of mind would not be admitted.

The matter proceeded to jury trial, and on March 14, the jury rendered a verdict finding Acuity had not acted in bad faith. B&F filed a motion for new trial on April 27, which was denied. B&F now appeals, maintaining the district court erred in (1) denying B&F's motion to compel answers previously omitted from Jaeger's deposition, (2) limiting evidence as to Acuity's post-filing-of-litigation conduct, and (3) determining evidence as to loss of peace of mind was inadmissible.

## II. Standards of Review.

"We review a district court's ruling on a discovery matter for abuse of discretion." *Mediacom Iowa, L.L.C. v. Inc. City of Spencer*, 682 N.W.2d 62, 66 (Iowa 2004). "[W]e afford the district court wide latitude. We will reverse a ruling on a discovery matter only for an abuse of discretion." *Exotica Botanicals, Inc. v. Terra Int'l, Inc.*, 612 N.W.2d 801, 804 (Iowa 2000) (citation omitted). "There is such an abuse when the grounds underlying a district court are clearly untenable or unreasonable." *Mediacom Iowa*, 682 N.W.2d at 66. There must also be a showing that the alleged error resulted in prejudice to provide grounds for reversal. *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 140 (Iowa 2013). In *Jones*, our supreme court summarized the applicable principles:

> It is well-settled that nonprejudicial error is never ground for reversal on appeal. *See Bengford v. Carlem Corp.*, 156 N.W.2d 855, 867 (Iowa 1968). Furthermore, we do not presume the existence of prejudice based on an erroneous discovery ruling. *See James v. Hyatt Regency Chi.*, 707 F.3d 775, 784 (7th Cir. 2013) ("We shall not reverse the district court's ruling [on a motion to compel] absent a clear showing that the denial of discovery resulted in actual and substantial prejudice . . . ."); *Team Cent., Inc. v. Teamco, Inc.*, 271 N.W.2d 914, 922 (Iowa 1978) (noting that an erroneous discovery ruling on privilege must be "of sufficient importance to justify a reversal"); *Schroedl v. McTague*, 169

N.W.2d 860, 865 (Iowa 1969) (holding that even if trial court's discovery ruling on party's request for admissions was erroneous, there was "no ground for a reversal as no prejudice therefrom appear[ed] in the record"). "[T]he burden rests upon the appellant not only to establish error but to further show that prejudice resulted." *In re Behrend's Will*, 10 N.W.2d 651, 655 (1943).

(Second and third alterations in original.)

We also review the district court's evidentiary rulings for an abuse of discretion. *State v. Olutunde*, 878 N.W.2d 264, 266 (Iowa 2016). The same abuse-of-discretion standard applies—we reverse if the district court exercised its discretion on clearly untenable or unreasonable grounds. *Ranes v. Adams Labs., Inc.*, 778 N.W.2d 677, 685 (Iowa 2010). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Id.* (quoting *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000)).

## III. Motion to Compel—Deposition.

B&F first contends the district court erred in refusing to compel those portions of Jaeger's deposition he declined to answer by asserting attorney-client privilege. Acuity argues the privilege was properly invoked because the actions taken by Acuity after the litigation commenced were all on the advice of counsel.

B&F argued Acuity acted in bad faith because it had no reasonable basis to deny B&F's claim for additional damages. *See Reuter v. State Farm Mut. Auto. Ins. Co., Inc.*, 469 N.W.2d 250, 253 (Iowa 1991) (stating that to establish the insurer acted in bad faith, the insured must "show the absence of a reasonable basis for denying benefits of the policy *and* the [insurer's] knowledge or reckless disregard of the lack of a reasonable basis for denying the claim").

B&F also asserted Acuity's bad faith was evidenced in part by Acuity's issuance of a check to B&F four days after the tornado, which indicated the claim was "settled in full," in violation of Iowa Administrative Code rule 191-15.41(10).[2]

Acuity denied the allegations of bad faith, and, specifically with respect to the "settled in full" language, Acuity maintained the language was harmless because Acuity never intended the language to be binding. To rebut these arguments, B&F sought to obtain answers from Jaeger during his deposition respecting Acuity's reasoning for denying B&F's requests for additional payment and appraisal and Acuity's true position on the "settled in full" language. For example:

> Q. Mr. Jaeger, who has been the person in charge of adjusting the claim of BF Jacobson on this property loss since the time of the filing of this lawsuit? A. Mr. Werger and I.
> . . . .
> Q. Okay. Did you at any time become aware of a request for appraisal by Mr. Jacobson on or about October 23, of 2012? A. As part of the litigation, yes. I—my attorney shared a letter with me.
> Q. All right. What is the reason Acuity refused to agree to the appraisal in October of 2012?
> COUNSEL FOR ACUITY: Do not answer that question. I'm invoking the attorney-client privilege, and I'm advising my client not to answer this or any other question that you pose to him about what the reasons were for Acuity to do anything in response to litigation. And that's exactly what you're doing, and I am not going to let him answer that or any other question that's directed toward decisions that were made while the litigation was pending.
> . . . .
> Q. Mr. Jaeger, would you tell me the reason that Acuity refused to conduct an appraisal when the request was made for one by Mr. Jacobson on October 23, 2012?

---

[2] Rule 191-15.41(10) provides:

> No insurer shall indicate to a first-party claimant on a payment draft, check or in any accompanying letter that said payment is "final" or "a release" of any claim unless the policy limit has been paid or there has been a compromise settlement agreed to by the first-party claimant and the insurer as to coverage and amount payable under the contract.

. . . .

A. Since this lawsuit was filed, every decision that we've made as a company has been under advice of counsel.

B&F asserts the questions asked did not call for the disclosure of attorney-client-protected information because B&F was not asking what conversations Acuity's representatives discussed with attorneys, but rather what the specific reasons were for Acuity's actions. B&F also argues the information falls outside the umbrella of attorney-client-privilege protection because the information was not intended to be confidential.

"Any confidential communication between an attorney and the attorney's client is absolutely privileged from disclosure against the will of the client." *Keefe v. Bernard*, 774 N.W.2d 663, 669 (Iowa 2009) (quoting *Shook v. City of Davenport*, 497 N.W.2d 883, 886 (Iowa 1993)); *see* Iowa Code § 622.10 (2011). "The party seeking to assert the privilege bears the burden to show an attorney-client relationship existed and that the communication was made in confidence." *Keefe*, 774 N.W.2d at 669.

Counsel for Acuity sent letters to counsel for B&F on December 12, 2012, and July 29, 2014, expressly stating reasons for Acuity's denials of appraisal.[3] Both letters were written by Acuity's counsel. Thus, the reasoning for Acuity's continued denial of the requests for appraisal were clearly communicated to B&F

---

[3] Counsel for Acuity provided one of the reasons noted in the December 12, 2012 letter:

As I am sure you are aware, the check was cashed by your client with the understanding that the check represented "settlement in full—ACV." It is clear that the parties agreed to the value of the property and the amount of the loss which negates any implementation of the Appraisal provisions of the Policy.

The July 29, 2014 letter stated in part, "Our letter of December 12, 2012, contains further explanation of our position on this issue and I would refer you to that letter as our position remains the same as it did at the time of the original letter."

and were not intended to remain confidential. If the deponent would have relied upon the same reasons as cited in the letters, it does not follow that Jaeger may invoke the attorney-client privilege to decline to answer the questions regarding Acuity's reasoning for denying appraisal. Further, we believe there is a distinction between asking a party what their attorney advised them and asking the party why they took the actions they did. We find the court improperly determined answers to these lines of questioning were protected by the attorney-client privilege. *See Miller v. Continental Ins. Co.*, 392 N.W.2d 500, 504-05 (Iowa 1986) (noting "voluntary disclosure of the content of a privileged communication constitutes waiver as to all other communications on the same subject" and citing Iowa Code § 622.10(2) (stating privilege does not apply "where the person in whose favor prohibition is made waives the right[]")). The attorney-client privilege may be waived, and the waiver may be either express or implied. *Brandon v. West Bend Mut. Ins. Co.*, 681 N.W.2d 633, 642 (Iowa 2004). "An express waiver occurs when a client voluntarily discloses the content of privileged communications." *Squealer Feeds v. Pickering*, 530 N.W.2d 678, 684 (Iowa 1995), *abrogated on other grounds by Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 690 N.W.2d 38, 48 (Iowa 2004). "[A]n implied waiver occurs where the [client] has placed in issue a communication which goes to the heart of the claim in controversy." *Id.* (alterations in original) (citation omitted).

We conclude questions pertaining to the information contained in the October 23, 2012 or July 29, 2014 letters to B&F were not properly objectionable on the basis of the attorney-client privilege and should have been fairly discoverable by B&F. *See* Iowa R. Civ. P. 1.503(1) ("Parties may obtain

discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, . . . . It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."); *see also Fagen v. Grand View Univ.*, 861 N.W.2d 825, 833 (Iowa 2015).

B&F also sought additional related information and argues even if the additional information was protected by attorney-client privilege, Acuity waived the privilege.[4]

B&F contends Acuity placed in issue its advice of counsel by asserting it relied on advice of counsel in making every post-filing-of-litigation decision. Although our supreme court has not directly addressed this issue, other courts have found the analysis in *Hearn v. Rhay*, 68 F.R.D. 574, 578-82 (E.D. Wash. 1975), persuasive in addressing implied waiver of the attorney-client privilege.[5] *Hearn* provides there are three criteria to find an implied waiver of the attorney-client privilege:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit [or raising an

---

[4] The additional information included questions pertaining to twice deducting the $5000 deductible, not paying interest on the $83,000, and who authorized Acuity's counsel to write the July 29, 2014 letter.

[5] *See*, *e.g.*, *Union Cty., Iowa v. Piper Jaffray & Co, Inc.*, 248 F.R.D. 217, 222 (S.D. Iowa 2008) ("The *Hearn* test . . . recognizes the importance of the attorney-client relationship, but permits a balancing of that interest against the interests of fundamental fairness. While critics of the *Hearn* approach argue that it is, for all practical purposes, a slippery slope, over three decades of case law make clear that such concerns are without substantial foundation. The reasonableness of the *Hearn* approach is particularly evident where, as here, a defendant has no alternative means of defending a claim brought by the party asserting the privilege.").

affirmative defense], by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

68 F.R.D. at 581; *accord Roehrs v. Minnesota Life Ins. Co.*, 228 F.R.D. 642, 646 (D. Ariz. 2005); *State Farm Mut. Auto. Ins. Co. v. Lee*, 13 P.3d 1169, 1173 (Ariz. 2000). Upon consideration of the *Hearn* test, the court in *Roehrs* determined:

[The] adjusters . . . impliedly waived the privilege by their deposition testimony that each considered and relied upon, among other things, the legal opinions or legal investigation in denying that the Roehrs' claims were covered under the reinstated policy. . . . Here, as in *Lee*, an *Hearn*-like affirmative act was made by the adjusters putting the privileged materials at issue. While the Defendants and the aforesaid three adjusters do not claim that they denied the Roehrs' claims solely because of its/their lawyers' advice, Defendants cannot reasonably deny that what these employees knew at the time they denied the Roehrs' claims included information received from their lawyers. What formed the subjective good faith beliefs and mental states of these three adjusters and the reasonableness of their decisions is critical in defense of the Roehrs' bad faith claim. Application of the privilege here would deny the Roehrs vital information to test the reasonableness and good-faith basis of Defendants' denial of their claims and would establish the shield-sword incongruity condemned in *Lee*.

228 F.R.D at 647.

The district court determined the attorney-client privilege should remain intact in this matter because: "Acuity has not asserted its attorney-client privilege as a defense to the bad faith charge. Instead, Acuity only asserts privilege in response to particular questions in a deposition, and admits that [it] had consulted with said attorney on decisions [it] had made." However, in his deposition, Acuity's counsel repeatedly asserted Jaeger was relying on the attorney-client privilege because "[e]ver since the lawsuit was filed, all decisions

have been made under advice of counsel." This broad assertion of the attorney-client privilege, while not expressly identified as an affirmative defense, was used by Acuity as a defense to the bad-faith claim. On this same issue, the Supreme Court of South Dakota has held:

> [The defendant] has not expressly relied on the advice of counsel as an essential element of its defense.
>
> Nonetheless, "[a]n insurer need not expressly rely upon the advice of counsel to waive the attorney-client privilege." An insurer may impliedly waive the attorney-client privilege "by injecting privileged communications into a case." When "an insurer makes factual assertions in defense of a claim which incorporate, expressly or implicitly, the advice and judgment of its counsel, it cannot deny an opposing party 'an opportunity to uncover the foundation for those assertions in order to contradict them.'" "A waiver is to be predicated not only when the conduct indicates a plain intention to abandon the privilege, but also when the conduct (though not evincing that intention) places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege."

*Andrews v. Ridco, Inc.*, 863 N.W.2d 540, 547-48 (S.D. 2015) (citations omitted). Other courts have also recognized the "'at issue' doctrine," that being "the discovery of attorney-client privileged communications between an insurer and its counsel is permitted where the insurer raises the advice of its counsel as a defense in the action and the communication is necessary to establish the defense." *See Genovese v. Provident Life & Accident Ins. Co.*, 74 So. 3d 1064, 1068 (Fla. 2011), and cases cited therein.

We find Acuity placed the communications with its counsel at issue when stating it relied upon counsel's advice in reaching every decision made after the litigation was filed. The court's determination this information is protected by the attorney-client privilege improperly prevented B&F from obtaining discovery on issues at the heart of the bad-faith claim. *See Brandon v. West Bend Mut. Ins.*

*Co.*, 681 N.W.2d 633, 642 (Iowa 2004) ("[Waiver] may be based not only on words expressing intent to waive, but conduct making it unfair for a client to invoke the privilege.").

We conclude the district court abused its discretion in denying B&F's motion to compel. However, B&F must also establish the erroneous discovery ruling was prejudicial before any relief may be afforded to B&F. Because the district court also ruled all post-filing-of-litigation conduct was inadmissible, any evidence gained from the discovery may also have been excluded by this subsequent evidentiary ruling, thereby effectively nullifying any prejudice. Thus we must address the evidentiary issue before addressing the claim of prejudice.

## IV. Evidence as to Post-Filing-of-Litigation Adjustment Decisions.

B&F also contends the district court abused its discretion in holding the following documents and testimony were inadmissible: (1) the letter by Acuity's counsel refusing B&F's October 23, 2012 request for appraisal, (2) the letter by Acuity's counsel refusing B&F's request for appraisal following remand of the case, (3) the fact that Acuity refused to consent to appraisal and only did so in response to the court's order, (4) Pierce's December 29, 2011 estimate, and (5) Werger's April 13, 2011 estimate.

All of this evidence fell under the categories of evidence labeled (b), (c), and (d) of Acuity's motion to determine admissibility of evidence.[6] The court addressed categories (b) through (d) in one section of its order, finding each of

---

[6] Acuity's motion to determine the admissibility of evidence identified category (b) as "[e]vidence of alleged conduct by Acuity following the alleged denial of plaintiff's claim," category (c) as "[e]vidence of alleged post-litigation conduct," and category (d) as "[e]vidence regarding appraisal."

the categories contained evidence "related to Acuity's conduct after the filing of litigation." The court cited to *Roesler v. TIG Insurance Co.*, 251 Fed. Appx. 489, 498 (10th Cir. 2007), and *Dakota, Minnesota & Eastern Railroad Corp. v. Acuity*, 771 N.W.2d 623, 634 (S.D. 2009), for the proposition that post-litigation conduct is irrelevant to a bad-faith claim and public policy prevents admissibility of such evidence. The court provided only the following additional reasoning for its determination that all post-filing-of-litigation conduct is inadmissible in this matter: "Though claim review continued after B&F Jacobson filed suit, this early filing may not be used as an end run around the prohibition on the use of post-litigation conduct as evidence of bad faith. Acuity's litigation tactics may not be presented as evidence at trial."

We are again faced with an issue not previously addressed by our supreme court. Review of this issue as addressed in other states reveals it is not clear that there is a bright-line rule precluding admission of post-filing-of-litigation conduct by insurers. In *Palmer by Diacon v. Farmers Insurance Exchange*, the Supreme Court of Montana explained:

> Courts have held, and we agree, that an insurer's duty to deal fairly and not to withhold payment of valid claims does not end when an insured files a complaint against the insurer. Several courts have considered whether evidence of an insurer's conduct during litigation of the underlying suit is admissible in a subsequent bad faith action. After examining the reasoning of courts that have considered the issue, we conclude that the continuing duty of good faith does not necessarily render evidence of an insurer's post-filing conduct admissible. Indeed, courts rarely should allow such evidence and we have adopted a balancing test for those rare circumstances.
> Public policy favors the exclusion of evidence of an insurer's post-filing litigation conduct in at least two respects. First, permitting such evidence is unnecessary because during the initial action, trial courts can assure that the defendants do not act

improperly. Next, and more importantly, the introduction of such evidence hinders the right to defend and impairs access to the courts.

. . . .

To permit evidence of insurers' litigation strategies and tactics is to impede insurers' access to the courts and right to defend, because it makes them reluctant to contest coverage of questionable claims. . . . Public policy dictates, therefore, that courts must use extreme caution in deciding to admit such evidence even if it is relevant to the insurer's initial decision to deny the underlying claim.

. . . In general, an insurer's litigation tactics and strategy in defending a claim are not relevant to the insurer's decision to deny coverage. . . .

. . . .

In some instances, however, evidence of the insurer's post-filing conduct may bear on the reasonableness of the insurer's decision and its state of mind when it evaluated and denied the underlying claim. Therefore, we do not impose a blanket prohibition on such evidence.

We believe the correct approach is to strike a balance between deterring improper conduct by the insurer and allowing insurers to defend themselves against spurious claims. Rule [5.403] . . . provides for that balance. When the insurer's post-filing conduct has some relevance, the court must weigh its probative value against the inherently high prejudicial effect of such evidence, keeping in mind the insurer's fundamental right to defend itself.

861 P.2d 895, 913-15 (Mont. 1993) (citations omitted). Other courts have also

followed this approach:

[W]e believe it would be a rare case where the insurer's decisions and conduct in the underlying litigation would be admissible in a first party bad faith claim. The appropriate inquiry for the circuit court in determining the relevance of such evidence is whether the insurer's post-filing conduct sheds light on the reasonableness of the insurer's decision or conduct in denying insurance benefits. The tort of first party bad faith, as alleged in the instant case, "typically occurs when an insurance company engages in wrongdoing during its processing or paying of policy benefits to its insured." As noted above, the relevant inquiry for such a claim is the insurer's decision and actions "at the time it made the decision to deny coverage." "[I]f 'the focus of a bad faith claim is the insurer's knowledge and belief during the time the claim is being reviewed,' then the relevance of the litigation conduct is severely diminished."

*Eastern R.R. Corp.*, 771 N.W.2d at 635-36 (citations omitted); *see also Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 523 (Ky. 2006) ("Evidence of post-filing conduct may often be of limited relevance to a claim of bad faith and raises distinct concerns about prejudice to the insurance company. . . . Thus, while it will no doubt further limit the admissibility of post-filing behavior, we want to emphasize that before admitting evidence of post-filing behavior, courts must be careful to weigh the probativeness of the proposed evidence against its potential for prejudice, . . . ."); *Barefield v. DPIC Cos., Inc.*, 600 S.E.2d 256, 277 (W. Va. 2004), Davis, J. (concurring) ("The general rule in other jurisdictions on this issue is that, 'while evidence of an insurer's litigation conduct may, in some rare instances, be admissible on the issue of bad faith, such evidence will generally be inadmissible as it lacks probative value and carries a high risk of prejudice.'" (quoting *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 341 (10th Cir. 1995) (footnote omitted)).

Some jurisdictions have determined that a complete ban on admission of post-litigation conduct is appropriate. *See Roussalis v. Wyo. Med. Ctr., Inc.*, 4 P.3d 209, 257 (Wyo. 2000) (finding doctors' tort claim of breach of implied covenant of good faith and fair dealing is not actionable); *see also Parker v. S. Farm Bureau Cas. Ins. Co.*, 935 S.W.2d 556, 562 (Ark. 1996) (finding that because the bad-faith "cause of action must exist and be complete at the time the action commenced . . . none of the conduct by [the insurer] after the filing of the complaint, including legal positions asserted, can provide a basis for [the] bad-faith claim"). As noted by the court in *Knotts*, the blanket prohibition of

admission of post-filing conduct "amounts to the denial of the continuing existence of a duty of good faith once litigation begins."  197 S.W.3d at 518 n.3.

Oppositely, some courts have allowed admission of post-litigation conduct. For example:

> The entire course of conduct between the parties is relevant to show malice in a bad faith claim. . . .
> In this case, the merits of John Deere's appeal have already been decided by this Court.  As a matter of law, John Deere prosecuted a meritless appeal.  Sanctions have been assessed to compensate Conifer for its efforts in defending a frivolous appeal.  However, no fact-finder has yet determined whether John Deere's actions on appeal were part of an unfair claim settlement practice and, if so, whether Conifer was damaged by the actions.  We conclude that Conifer was entitled to present proof to the jury that John Deere's bad faith was a continuing course of conduct, and that its postjudgment conduct is admissible to prove malice.

*Federated Mut. Ins. Co. v. Anderson*, 991 P.2d 915, 923 (Mont. 1999), *abrogated on other grounds by Citizens Awareness Network v. Mont. Bd. of Envtl. Review*, 227 P.3d 583, 587 (Mont. 2010); *see also Barefield*, 600 S.E.2d at 271.

It is of note that the Iowa Supreme Court has previously acknowledged actions constituting bad faith may arise after the filing of litigation.  *See Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 460 N.W.2d 858, 861 (Iowa 1990) ("[A] bad-faith claim might well be based on events subsequent to the filing of the suit on a policy and therefore could not be based on the 'same' facts."); *see also Villarreal v. United Fire & Cas. Co.*, 873 N.W.2d 714, 729 (Iowa 2016). Because the Iowa Supreme Court has recognized that bad-faith conduct may arise both before and during litigation, our analysis does not end on the date the petition was filed.  We acknowledge in the worker's compensation arena our supreme court has stated that it has rejected the "argument that a bad-faith

refusal to pay was a continuing tort." *Squealer Feeds*, 530 N.W.2d at 683 (citing *Brown v. Liberty Mut. Ins. Co.*, 513 N.W.2d 762, 764 (Iowa 1994). We are not sure how to square *Leuchtenmacher* and *Villarreal* with *Squealer Feeds* and *Brown*. But we note that in *Squealer Feeds* the court stated, "[S]ome of the documents in the claim file prepared after the denial may conceivably contain relevant information." 530 N.W.2d at 683.

Here, without any Iowa Rule of Evidence 5.403 analysis or an in camera review of the materials or testimony, the district court determined all evidence after the filing of the petition was not admissible. Because post-filing-of-litigation evidence may contain relevant information to Acuity's decision to deny further payment, so long as it is "not privileged" it certainly was discoverable. *See* Iowa R. Civ. P. 1.503(1); *Squealer Feeds*, 530 N.W.2d at 683.

Moreover, in its order, the district court determined that claim review continued in this matter after the litigation was filed. B&F contends the decisions to refuse an appraisal, refusal to pay interest on the second payment, and refusal or delay in paying the deductible amount that had been already accounted for are all adjusting decisions—not litigation tactics or strategies.

Here, B&F was attempting to show the resistance to the appraisal was at least in part, if not primarily, based upon Acuity's position that the original payment was a final resolution of the claim due to the language on the check, "settlement in full—ACV." Thus, B&F argues the actions in adjusting the claim continued post filing of the petition, contrary to the administrative regulation prohibiting "settlement in full" language on a check under these facts. B&F was entitled to discover and present evidence on the issue of whether Acuity

unreasonably delayed payment. *See Squealer Feeds*, 530 N.W.2d at 683 ("[A] continued delay in payment may be unreasonable even though the original denial was not.").[7]

We conclude the district court abused its discretion in ruling all post-filing-of-litigation evidence was inadmissible rather than weighing the probative value of the evidence against its potential for unfair prejudice under rule 5.403. As one court has stated, it is of "critical importance" for the trial court to weigh "the probative value of any potentially relevant litigation decisions against the danger of unfair prejudice." *Eastern R.R. Corp.*, 771 N.W.2d at 636.[8]

Our supreme court has previously concluded that where the district court determined evidence inadmissible without performing a rule 5.403 balancing analysis, the appellate court is not prevented from upholding the district court's exclusion of the evidence on an alternative ground. *See Giza v. BNSF Ry.*, 843 N.W.2d 713, 724-25 (Iowa 2014). In *Giza*, the alternative ground examined was whether the danger of unfair prejudice substantially outweighed the probative value of the evidence. *Id.* at 725 (citing *State v. Werts*, 677 N.W.2d 734, 737-38 (Iowa 2004) (indicating the appellate court should weigh prejudicial effect against probative value where the district court did not do so and rule 5.403 is raised as an alternative ground for sustaining the district court's ruling)). Here, Acuity

---

[7] In fact, the verdict form indicates B&F was required to establish "Acuity acted in bad faith to [B&F] in denying the claim or delaying payment."

[8] Acuity's motion to determine admissibility of evidence acknowledges the court's need to perform a rule 5.403 analysis to determine the admissibility of the post-filing-of-litigation evidence. During the hearing on the motion, B&F also noted the district court "can use 403" to exclude any unfairly prejudicial evidence.

raised the claim that such evidence was unfairly prejudicial under a 5.403 analysis both before the district court and on appeal.

If adjusting conduct contrary to the administrative regulation continued post-petition, the "conduct may bear on the reasonableness of the insurer's decision and its state of mind when it evaluated and denied the underlying claim" and be probative of bad faith. *Palmer*, 861 P.2d at 915. The conduct may also bear on the reasonableness of the continued delay in payment.

In evaluating the admissibility of the evidence in question, we weigh the probative value versus unfair prejudice pursuant to rule 5.403, being mindful of the public-policy consideration that allowing evidence of post-litigation conduct may permit jurors to penalize insurers for proper litigation strategy and tactics that are perceived as evidence of bad faith and could prevent insurers from zealously defending questionable claims. *See Knotts*, 197 S.W.3d at 520. Evidence of conduct that is clearly litigation strategy and tactics would be unfairly prejudicial. Evidence of conduct clearly related to adjusting decisions required of the contractual relationship would be admissible under the rule 5.403 analysis. Evidence of conduct between those two extremes would require a closer weighing or examination of probative value versus unfair prejudice and may result in exclusion.

Here, we conclude the probative value of any evidence that Acuity continued to rely in part or in total upon the original payment being a final resolution of the claim due to the language on the check, "settlement in full—ACV," was not substantially outweighed by the danger of unfair prejudice. This basis for denial of the claim existed prior to the initiation of litigation, as well as

before any evidence that Acuity had procured counsel, and could not be fairly described as a litigation tactic. Thus, any such evidence would be probative that Acuity denied the claim for an improper purpose, and would have had no effect on Acuity or its counsel to zealously defend its claim.

Moreover, any evidence of Acuity's reasons to withhold payment of $5000 for the deductible that had previously been accounted for seems far removed from any litigation tactic. The contract limited the claim deductible to $5000 and we are unable to discern any trial strategy that would be jeopardized by the admission of the reasons for Acuity's delay in paying the $5000. We conclude this evidence is more probative than prejudicial and is admissible.

We are not able to reach the same conclusion, however, relative to the evidence of why Acuity did not pay interest on the $83,000 payment. B&F's claim is for prejudgment interest, an issue for the court and not relevant to issues presented to the factfinder. *See Opperman v. Allied Mut. Ins. Co.*, 652 N.W.2d 139, 140-41 (Iowa 2002).

Upon a separate evidentiary issue, we also find it significant that the two estimates by Pierce and Werger that B&F sought to admit (but were determined to be inadmissible) were completed prior to the filing of the suit. The district court appears to have included the estimates in the category of post-filing-of-litigation evidence because the estimates were submitted at appraisal. However, the estimates were completed prior to the litigation and thus do not fall under the category of litigation conduct and do not draw the same public-policy concerns as expressed in the cases cited above. The estimates are relevant and probative of the issues and admissible.

Because much of B&F's evidence was adjudged inadmissible without reasonable or tenable grounds, we conclude B&F was prejudiced by being unable to tell its full story. Accordingly, we reverse and remand for a new trial.

B&F also asserts the district court should not have advised the jury of the following:

> I am advising you that the court has taken judicial notice that on January 11, 2013, this court entered an order which stayed a request for an appraisal. You heard some testimony yesterday about an appraisal, which is a process that is provided for under the insurance policy. I am telling you that I stayed that appraisal process on January 11, 2013, and the stay remained in place until I entered a later order on October 13th, 2014, which ended the stay. As this matter has been taken judicial notice of, you may properly consider it as evidence in your deliberations.

B&F argues "[t]he instruction by the court was erroneous and allowed the jury to be misled into believing the delay was due to court action and not by Acuity's refusal to participate in appraisal and that Acuity had not resisted the appraisal on grounds it was now contradicting at trial . . . ." B&F does not submit any authority in support of its argument that "the moment the case was reversed, the stay ended." We will not address this claim. *See* Iowa R. App. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

## V. Evidence of Loss of Peace of Mind.

B&F also maintains the district court improperly determined B&F may not present evidence as to loss of peace of mind.[9] Because this issue may arise upon re-trial we choose to address it.

---

[9] B&F contends the court's ruling was based on erroneous interpretation of law, and our review should be on legal error. *See Kurth v. Iowa Dep't of Transp.*, 628 N.W.2d 1, 5

The district court determined the damages for loss of peace of mind were not distinguishable from those for emotional distress as B&F asserted. The court found although partners of a partnership, as individuals, may seek damages for emotional distress, "[t]he rights and damages due to the partner are not available to the partnership itself." Because the partners were not named parties to the suit, the court held B&F may not seek damages for loss of peace of mind or emotional distress.

B&F argues it sought damages for loss of peace of mind, not emotional distress. In support of this distinction, B&F cites to *Dolan v. Aid Insurance Co.*, 431 N.W.2d 790, 792 (Iowa 1988). In *Dolan*, our supreme court cited to reasons for adopting the first-party bad-faith tort, including: "'When an insured purchases insurance, she is purchasing more than financial security; she is purchasing peace of mind,' and 'therefore, the extra remedy of bad faith is needed to insure she receives the benefit of her bargain.'" 431 N.W.2d at 792 (citation omitted). B&F acknowledges that insureds who are natural persons may seek emotional damages, but "a limited liability company, certainly cannot suffer emotional distress." *Barreca v. Nickolas*, 683 N.W.2d 111, 124 (Iowa 2004). B&F simply submits it did not seek damages for emotional distress and only sought damages for loss of peace of mind.

We agree with the court that B&F is not entitled to the damages sought. The authority cited by B&F does not expressly provide for damages for loss of peace of mind and only explains loss of peace of mind is one factor supporting

---

(Iowa 2001). However, because the district court's ruling "is not based on any statute of codified rule," we review for an abuse of discretion. *Id.*

the adoption of a first-party bad-faith tort. We agree with the court that "the two ideas are not disparate concepts but part of the same potential damage claim." *See Brandt v. Super. Ct.*, 693 P.2d 796, 824 (Cal. 1985) ("In *Crisci* [*v. Security Ins. Co. of New Haven, Connecticut*, 426 P.2d 173 (Cal. 1967)], we discussed the peace of mind of the insured as a basis for granting the type of damages most appropriate to compensate an insure for the disturbance of his tranquility: damages for emotional distress."). We conclude the court did not abuse its discretion in precluding admission of evidence as to loss of peace of mind, and affirm.

**VI. Prejudice Resulting from the Discovery Ruling.**

Inasmuch as we have determined the district court's evidentiary ruling holding all post-filing-of-litigation evidence inadmissible was in error, we must return to the issue of whether B&F was prejudiced by the district court's discovery ruling denying the motion to compel answers to questions avoided in Jaeger's deposition. Here, the case presented to the jury was essentially a shell of the evidence B&F wanted to present in this action. The district court's discovery ruling and evidentiary rulings hamstrung B&F's ability to tell its story. As we have indicated, the evidence B&F wanted to discover and wanted to present at trial went to the heart of its bad-faith claim.

As we have determined, B&F should be permitted to provide evidentiary support for its claim that Acuity denied further damages or unreasonably delayed payments on the basis of Acuity's alleged reliance on the "settlement in full" language on the check. For these reasons, the district court's refusal to allow B&F to seek additional evidence through discovery on this topic or subject

resulted in both actual and substantial prejudice. Because we have previously concluded this action shall be reversed and remanded for a new trial, B&F shall also be afforded discovery consistent with this opinion.

**VII. Conclusion.**

We conclude the district court abused its discretion in denying B&F's motion to compel and in determining post-filing-of-litigation conduct was inadmissible without first completing a proper rule 5.403 analysis. The court also erred in denying the admission of the two estimates of damages. Upon our balancing analysis, we conclude B&F is entitled to present post-filing-of-litigation evidence on whether B&F's claim for additional monies was denied or further payment delayed due in whole or part to the language on the check, "settlement in full—ACV." Accordingly, we reverse and remand this matter for further proceedings and a new trial consistent with this opinion. We affirm on the issue of the inadmissibility of evidence on prejudgment interest. We also affirm the district court's determination that evidence of loss of peace of mind is inadmissible.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**