# IN THE SUPREME COURT OF IOWA

No. 16–0775

Filed February 23, 2018

**OLIVER FENCEROY,**

Appellee,

vs.

**GELITA USA, INC., TOM HAIRE,** and **JEFF TOLSMA,**

Appellants,

and

BOB KERSBERGEN and JEREMIE KNEIP,

Defendants.

---

Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary, Judge.

Interlocutory review of a district court order denying a protective order and permitting discovery into defense counsel's prelawsuit investigation. **DISTRICT COURT ORDER AFFIRMED AND CASE REMANDED.**

Aaron A. Clark of McGrath North PC LLO, Omaha, Nebraska, for appellants.

Stanley E. Munger of Munger, Reinschmidt & Denne, LLP, Sioux City, for appellee.

**CADY, Chief Justice.**

This review presents a significant issue regarding the boundaries of attorney–client privilege and work-product protection. We must decide whether plaintiff's counsel may depose defense counsel and obtain counsel's prelawsuit work product. After leaving his job, plaintiff filed an administrative complaint charging his former employer with race discrimination. In response to the charge, the employer hired an attorney to defend the company and investigate the merits of the charge. The employer filed an administrative position statement wherein it relied upon the attorney's investigation to support its *Faragher–Ellerth* affirmative defense. In the subsequent civil action, the employer retained the same attorney and again raised the affirmative defense. The employer claimed attorney–client privilege and work-product protection over the investigation and moved for a protective order to prevent plaintiff from deposing defense counsel and obtaining her investigation notes. Yet, in its motion for summary judgment, the employer again relied upon the investigation to support its defense. The district court denied the protective order, and we granted the employer's interlocutory appeal.

We conclude the district court did not abuse its discretion by denying the defendants' protective order. When an employer raises a *Faragher–Ellerth* affirmative defense and relies upon an internal investigation to support that defense, the employer waives attorney–client privilege and nonopinion work-product protection over testimony and documents relating to the investigation. On remand, the employer is permitted to amend its answer and brief to limit the affirmative defense to only the period of plaintiff's employment. If the employer declines to so amend, it may not claim attorney–client privilege or work-product

protection over the 2013 investigation, and plaintiff may depose defense counsel as well as obtain counsel's investigation notes.

## I. Factual Background and Proceedings.

Oliver Fenceroy, an African-American man, was employed by Gelita USA, Inc. (Gelita), a maker of gelatin products. He began working at Gelita's Sergeant Bluff plant in 1975. In this lawsuit, he alleges he experienced consistent racial harassment from coemployees and supervisors throughout his employment. His complaint identified a number of workplace incidents involving racially disparaging comments by employees.

Gelita implemented an antiharassment policy that barred disparate treatment in the workplace on the basis of race. Fenceroy acknowledged receiving a written memorandum that discussed the antiharassment policy in August of 2010. Additionally, Fenceroy attended company trainings in 2011, 2012, and 2013 that discussed workplace harassment. He also received copies of Gelita's Code of Conduct, which contained the company's antiharassment policy, in 2011 and 2012. Further, Gelita conducted a survey in 2012 that requested anonymous feedback about potential problems or changes to the company. Fenceroy received the survey but did not report any harassment.

Gelita's antiharassment policy contained detailed reporting procedures. The policy instructed employees to report any harassment to their supervisors or to the human resources department. If an employee is harassed by his or her direct supervisor, the policy permitted an employee to bypass that individual and report the harassment to the supervisor's superior.

It is undisputed that Fenceroy only made one complaint to Gelita about racial harassment. In September of 2011, Fenceroy complained to Gelita's Vice President of Business Support, Jeff Tolsma, about a rope tied on the company's production floor. Fenceroy believed it represented a noose. Tolsma notified the plant's production manager, Jeremie Kneip, of the complaint. The two individuals located the rope and determined it was not a noose, but rather a loop used to facilitate pulling a scale downward. Nevertheless, they untied the knot so there was no longer a loop in the rope.

Fenceroy stopped working for Gelita in March 2013. He filed a complaint with the Iowa Civil Rights Commission (ICRC) a short time later. The complaint charged Gelita with race discrimination. Upon receipt of Fenceroy's ICRC charge, Gelita retained attorney Ruth Horvatich and tasked her with developing a strategy to defend the company during administrative proceedings.

Pursuant to this representation, Horvatich interviewed several Gelita employees to ascertain the merits of Fenceroy's complaint. Tolsma was present for and participated in each interview. A union representative, John Hoswald, was also present during the employee interviews. At the end of each interview, Horvatich drafted a witness statement that summarized the employee's account and instructed the employee to sign the document.

Horvatich's investigation revealed some Gelita employees had made racially disparaging comments in the workplace. Gelita subsequently terminated one employee, Bob Kersbergen, and disciplined others, including Kent Cosgrove, Tom Haire, and Lewis Bergenske. Horvatich did not participate in any of the disciplinary decisions.

On May 30, 2013, Gelita filed a position statement with the ICRC in response to Fenceroy's discrimination charge. The statement, drafted by Horvatich, addressed the merits of Fenceroy's racial harassment claim. It argued Gelita could not be held vicariously liable for supervisor harassment because it could assert the *Faragher–Ellerth* affirmative defense. Specifically, in discussing the affirmative defense, Gelita argued,

> [T]he Company distributed a valid discrimination and harassment policy, which contained flexible reporting procedures and listed individuals that acts of harassment could be reported to, who were in a position to take corrective action. The discrimination and harassment policy also contains detailed procedures relating to the investigation and resolution of complaints. After learning of Complainant's complaint relating to the rope, the Company took immediate action. The same day of the complaint, the Company performed an investigation and resolved the complaint by untying the knot that was in the rope, which has remained untied since that time. The Company notified the Complainant of this resolution. *Additionally, after the Complainant filed the charge at issue with the Iowa Civil Rights Commission, the Company investigated the allegations of harassment, which resulted in the termination of Mr. Kersbergen and the discipline of Mr. Haire, Mr. Bergenske, and Mr. Cosgrove.* During his employment, Complainant only made one report of harassment and unreasonable failed to report any other allegations to management, despite the Company's clear reporting procedures. Thus, it is clear that the Company exercised reasonable care to prevent harassment, *promptly corrected any harassing behavior*, and the Complainant unreasonably failed to take advantage of the Company's clear reporting procedures. As a result, the Complainant's allegation of racial harassment fails.

(Emphasis added.) Thus, the statement Gelita filed with the ICRC signaled it would rely on its investigation into the complaint to help support the first prong of its affirmative defense that it exercised reasonable care to prevent and correct harassing behavior.

At the culmination of the administrative proceedings, the ICRC issued Fenceroy a right to sue. On May 30, 2014, Fenceroy filed a civil

action in district court against Gelita and four named employees: Bob Kersbergen, Tom Haire, Jeff Tolsma, and Jeremie Kneip. Fenceroy alleged the defendants engaged in racial harassment in violation of the Iowa Civil Rights Act and he was constructively discharged. He also alleged Kersbergen and Haire engaged in tortious infliction of severe emotional distress.

Gelita again retained Horvatich to defend the company, as well as Haire and Tolsma, in the civil action. The defendants filed an answer that raised a number of affirmative defenses. One defense alleged Fenceroy "unreasonably failed to take advantage of any preventative or corrective opportunities provided by Defendant Gelita"; and Gelita "exercised reasonable care to prevent and promptly correct any harassing behavior."

During discovery, defendants produced the witness statements drafted by Horvatich and signed by the employees during her 2013 investigation. Fenceroy deposed some of the employees Horvatich interviewed during the investigation. He also deposed Tolsma and inquired into the nature and scope of the 2013 investigation, as well as the subsequent disciplinary decisions.

On March 23, 2016, counsel for Fenceroy issued a notice to depose Horvatich. He also requested Horvatich provide "notes from the investigation that resulted in Gelita's Position Statement," as well as any "notes from interviews" with Gelita employees.

Defendants moved for a protective order. They asserted Fenceroy's discovery request sought privileged information. They claimed the 2013 investigation was solely for the purpose of preparing a defense to plaintiff's ICRC charge, and all communications between Gelita and Horvatich, as well as any notes taken by Horvatich, were done in

anticipation of litigation. They further argued the investigation was not "at issue" in their affirmative defense because it occurred after Fenceroy left the company and their actions could not have remedied any terms or conditions of his employment.

In resisting the protective order, Fenceroy asserted the defendants' impliedly waived any privileges. He claimed the proceedings before the ICRC revealed Gelita intended to rely on its postcomplaint investigation by Horvatich to help prove its affirmative defense. More specifically, he argued the investigation conducted after he left his employment was relevant to the lawsuit because it could be used in two ways. First, the investigation could be used to show its reasonableness in preventing harassing workplace behavior. Second, it could help establish that Fenceroy should have taken advantage of its response by making his complaint before he left his employment.

Prior to the hearing on the motion for a protective order, defendants filed a motion for summary judgment. This motion claimed defendants were entitled to judgment as a matter of law based on their *Faragher–Ellerth* defense. Within its discussion of this defense, specifically within a subsection titled "Gelita Exercised Reasonable Care to Prevent and Correct Promptly Any Harassing Behavior," defendants asserted that "[e]ven though Plaintiff was no longer with Gelita at the time of his Complaint, in response to his charge, the Company investigated his allegations, discharged one employee, and disciplined three others."

The district court denied the protective order, finding the defendants waived attorney–client privilege with respect to the 2013 investigation. It concluded Horvatich's investigation was a key piece of evidence in litigating the affirmative defense and Fenceroy "must be

permitted to probe the substance of [the investigation] to determine its sufficiency." The court further held defendants waived work-product protection by placing the 2013 investigation at issue. Defendants filed for, and we granted, interlocutory review.

On review, defendants continue to maintain their *Faragher–Ellerth* defense is "based upon Fenceroy's unreasonable failure to take advantage of preventative and corrective opportunities" during his employment. Defendants further allege the investigation cannot be "at issue" with respect to the affirmative defense because the evidence is "not necessary" to prevail in their *Faragher–Ellerth* defense. Fenceroy argues on review that defendants' position is contrary to their actions before the district court. To illustrate, Fenceroy points to defendants' summary judgment motion, which referenced the investigation as evidence of Gelita's reasonable corrective actions when faced with a harassment complaint.

## II. Standard of Review.

We review district court rulings on discovery matters for abuse of discretion. *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 139 (Iowa 2013). Discovery rulings are "committed to the sound discretion of the trial court." *State v. Ary*, 877 N.W.2d 686, 702 (Iowa 2016). "A district court abuses its discretion 'when the grounds underlying a district court order are clearly untenable or unreasonable.'" *Sioux Pharm, Inc. v. Eagle Labs., Inc.*, 865 N.W.2d 528, 535 (Iowa 2015) (quoting *Mediacom Iowa, L.L.C. v. Inc. City of Spencer*, 682 N.W.2d 62, 66 (Iowa 2004)).

## III. Analysis.

### A. Implied At-Issue Waiver of Attorney–Client Privilege.

1. *The* Faragher–Ellerth *affirmative defense.* Our law has long recognized that employers have a duty to take reasonable measures to

investigate and eliminate workplace discrimination. At the same time, growing attention has focused on workplace discrimination committed by supervisors and managers, largely due to their authority over subordinate employees bestowed on them by the employer. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 802, 118 S. Ct. 2275, 2290 (1998) (reasoning that supervisors who engage in workplace harassment are aided in their agency relationship to the employer). This attention has made employers vicariously liable for discriminatory harassment by supervisors and heightened the importance for employers to affirmatively act to prevent workplace discriminatory conduct and properly respond to employee claims of workplace discrimination when they arise. *See id.* at 807–08, 118 S. Ct. at 2292–93; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764–65, 118 S. Ct. 2257, 2270 (1998). It has also led to a two-part affirmative defense to claims of vicarious liability for employers who responsibly act to avoid workplace discrimination. *Faragher*, 524 U.S. at 807, 118 S. Ct. at 2293. This defense allows these employers to escape vicarious liability for claims that do not involve tangible employment action. *Id.*

The two-part defense requires employers to show reasonable care was exercised to "prevent and correct promptly any . . . harassing behavior" and to further show the claimant employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer." *Id.* This remedial action defense was set out in two landmark decisions by the United States Supreme Court in 1998, and is commonly known as the *Faragher–Ellerth* defense. *See id.*; *Ellerth*, 524 U.S. at 765, 118 S. Ct. at 2270. We adopted the defense in *Farmland Foods, Inc. v. Dubuque Human Rights Commission*, 672 N.W.2d 733, 744 n.2 (Iowa 2003). The policy behind the affirmative defense is

simple and direct. By offering a complete defense to vicarious liability, it encourages employers to prevent workplace discrimination and harassment by adopting antidiscrimination policies and complaint procedures or by taking other suitable action.

In adopting the vicarious liability standard established in *Faragher* and *Ellerth*, we recently clarified that vicarious liability does not replace the direct negligence theory of employer liability, but rather supplements the theory with an additional agency-based standard. *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 574 (Iowa 2017). In this case, plaintiff has alleged harassment by both supervisory and nonsupervisory employees. Consequently, defendants have properly raised the *Faragher–Ellerth* affirmative defense in regard to the claims of vicarious liability for supervisor harassment.

2. *Waiver of attorney–client privilege through the* Faragher–Ellerth *affirmative defense.* In Iowa, affirmative defenses are raised in responsive pleadings in a lawsuit. The evidence to support a defense is then presented at trial or summary adjudication. While part of the focus of the *Faragher–Ellerth* affirmative defense is on the reasonableness of the plaintiff's conduct in utilizing complaint procedures to avoid harm, equal focus is on the conduct of the employer in preventing and responding to incidents of harassment. This evidence can include the actions of the employer in establishing and maintaining antidiscrimination policies and complaint procedures, past conduct by the employer in responding to complaints, and evidence of employer conduct in responding to the specific allegations articulated by the plaintiff in the pending legal proceeding. As a result, an employer's investigation into a harassment complaint that subsequently results in a lawsuit can become the centerpiece of the affirmative defense. Moreover,

those who assist the employer in the investigation can become important supporting witnesses. Thus, the issue we confront in this case surfaces when, as in this case, an employer uses an attorney to conduct an investigation into a complaint, and the investigation gathered relevant evidence sought to be used by the employer to support the *Faragher–Ellerth* affirmative defense in a subsequent lawsuit.

Our law recognizes that a "confidential communication between an attorney and the attorney's client is absolutely privileged from disclosure against the will of the client." *Shook v. City of Davenport*, 497 N.W.2d 883, 886 (Iowa 1993), *abrogated on other grounds by Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 690 N.W.2d 38, 48 (Iowa 2004). At the same time, a basic component of a fair trial requires that when a party injects a legal issue into a lawsuit, the opposing party is entitled to discover the relevant evidence concerning the issue. *Squealer Feeds v. Pickering*, 530 N.W.2d 678, 684 (Iowa 1995), *abrogated on other grounds by Wells Dairy*, 690 N.W.2d at 48. When these two venerable legal principles come face to face because relevant information concerning an issue injected into a lawsuit by a party includes communications between that party and his or her attorney, we have concluded that the party who injects the issue into the heart of a lawsuit impliedly waives the attorney–client privilege. *Id.* The outcome is derived from basic fairness and requires the party injecting the issue into the lawsuit to decide if the privileged information is important enough to the lawsuit to waive the privilege. These two legal principles come face to face in this case.

We have confronted the clash of these two doctrines in prior cases, but never in regard to the *Faragher–Ellerth* defense. Courts in other jurisdictions, however, have held that when a defendant asserts the

*Faragher–Ellerth* defense and then relies on an internal investigation to support the defense, it waives attorney–client privilege over the investigation. *See, e.g., Angelone v. Xerox Corp.*, No. 09–CV–6019, 2011 WL 4473534, at *2 (W.D.N.Y. Sept. 26, 2011) ("[W]hen a Title VII defendant affirmatively invokes a *Faragher–Ellerth* defense that is premised, in whole in or part, on the results of an internal investigation, the defendant waives the attorney-client privilege and work product protections for not only the report itself, but for all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation."); *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, No. 1:08–CV–173, 2009 WL 1543651, at *12 (N.D. Ind. June 2, 2009) ("[A] defendant may also waive the attorney-client privilege if it asserts its investigation as part of its defense."); *EEOC v. Outback Steakhouse of Fla., Inc.*, 251 F.R.D. 603, 612 (D. Colo. 2008) ("The Court agrees that to the extent that Defendants have asserted the *Faragher/Ellerth* affirmative defense, they have waived the protections of the attorney-client privilege and work product doctrine regarding investigations into complaints made by female employees."); *Walker v. County of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005) ("If Defendants assert as an affirmative defense the adequacy of their pre-litigation investigation into Walker's claims of discrimination, then they waive the attorney-client privilege and the work product doctrine with respect to documents reflecting that investigation.").

This line of cases stems from the seminal case of *Harding v. Dana Transport, Inc.*, 914 F. Supp. 1084, 1096 (D.N.J. 1996). In *Harding*, two female employees brought administrative complaints against their employer, Dana, alleging sex discrimination. *Id.* at 1087. Dana subsequently retained an attorney, who conducted an investigation for

the purpose of formulating a response. *Id.* at 1088. The attorney interviewed the company's president, controller, and two managers. *Id.* Dana then relied on this investigation as part of its affirmative defense in the administrative proceedings, as well as the subsequent lawsuit. *Id.* When plaintiffs' counsel sought to depose the attorney about the investigation, Dana argued the information was privileged because "it did not assert reliance on the advice of counsel as an affirmative defense," but rather "merely intend[ed] to offer the fact that [their attorney] did conduct an investigation." *Id.* at 1096. The court concluded Dana waived attorney–client privilege. *Id.*

> Discovery of the content of the investigation is relevant to much more than the state of mind of Dana. Rather, the investigation, itself, provides a defense to liability. As previously reviewed, Title VII permits employer liability which employers may refute by proving that they reasonably and sufficiently investigated the allegations of discrimination. Dana has attempted to utilize the results of Mr. Bowe's investigation both as a defense to liability under Title VII and as an aspect of its preparation for the sexual discrimination trial itself. By asking Mr. Bowe to serve multiple duties, the defendants have fused the roles of internal investigator and legal advisor. Consequently, Dana cannot now argue that its own process is shielded from discovery. Consistent with the doctrine of fairness, the plaintiffs must be permitted to probe the substance of Dana's alleged investigation to determine its sufficiency. Without having evidence of the actual content of the investigation, neither the plaintiffs nor the fact-finder at trial can discern its adequacy.

*Id.* (citation omitted). Consequently, the court found the employer could not avoid discovery by arguing that the relevance of the investigation was not its content, but that it was conducted. *Id.* Instead, the court found that the adequacy or reasonableness of the investigation was the relevant fact injected into the lawsuit by the defendant, which made the content of the investigation relevant. *Id.*

We agree that an employer who relies on a presuit investigation to support a *Faragher–Ellerth* affirmative defense waives attorney–client privilege when the investigation is conducted by an attorney. Normally, the process of an investigation into a complaint is at issue when the *Faragher–Ellerth* defense is asserted, "including what the employer knew of the employee's complaints and when." *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 319 (N.D. Ill. 2010). When an employer affirmatively relies on the reasonableness of its investigation to support the defense, "[t]he only way that Plaintiff, or the finder of fact, can determine the reasonableness of the Defendant's investigation is through full disclosure of the contents" of the investigation. *Id.* (quoting *Brownell v. Roadway Package Sys., Inc.,* 185 F.R.D. 19, 25 (N.D.N.Y. 1999)). In order to adequately challenge a *Faragher–Ellerth* affirmative defense, plaintiff must be permitted to probe the nature and scope of the relied upon investigation. It would be fundamentally unfair to allow an employer to shield material facts from discovery simply by hiring the same attorney who conducted a presuit investigation to represent the employer in the subsequent civil action.

The key element behind this authority is that the *Faragher–Ellerth* defense must not only be pled, but the employer must then *rely* on the attorney's investigation into plaintiff's discrimination allegations in proving the defense. When the reasonableness of the investigation into the allegations is relied upon as a defense, the contents of the investigation are placed into issue and become subject to disclosure.

3. *Merits.* Here, Gelita expressly relied on Horvatich's investigation to support its *Faragher–Ellerth* affirmative defense in its ICRC position statement. In the civil action, defendants raised the affirmative defense in their answer. When moving for a protective order,

defendants argued the investigation could not be at issue, as Fenceroy had already left his position. Yet, in their motion for summary judgment, within a subsection entitled "Gelita Exercised Reasonable Care to Prevent and Correct Promptly Any Harassing Behavior," defendants argued that "[e]ven though Plaintiff was no longer with Gelita at the time of his Complaint, in response to his charge, the Company investigated his allegations, discharged one employee, and disciplined three others."

On appellate review, defendants continue to maintain they are not relying on the Horvatich investigation. They assert their affirmative defense is not related to the actions Gelita took in response to Fenceroy's complaint. Instead, defendants argue their defense is that Gelita maintained a workplace reporting procedure and training process to prevent and correct workplace harassment and that Fenceroy unreasonably used the procedure to correct the alleged harassment before he left his employment.

Defendants primarily rely on *Treat*, to support their position. In *Treat*, three plaintiffs brought suit against their employer, Kelley, alleging sex discrimination in violation of Title VII. 2009 WL 1543651, at *1. During discovery, plaintiffs requested a number of documents, including notes taken by Kelley's counsel in response to plaintiffs' administrative charge, drafts of counsel's administrative position statements and legal memoranda, and emails and faxes between counsel and employees sent in preparation of Kelley's administrative position statement. *Id.* at *1–2. Plaintiffs argued Kelley raised the *Faragher–Ellerth* affirmative defense and, as such, waived all privilege over the presuit investigation. *Id.* at *12. However, the court concluded "it ha[d] been fleshed out during the discovery process that Kelley's defense is not that it acted reasonably upon learning of the Plaintiffs' complaints, but rather that the Plaintiffs

did not take advantage of Kelley's policies in reporting harassment and discrimination." *Id.* at *13. Because the company was "not actually relying on the adequacy of any investigation to support an affirmative defense, Kelley has not placed outside counsel's investigation at issue." *Id.*

The critical point in *Treat* was the existence of a trial court record to show the employer took a position that the *Faragher–Ellerth* defense would only be supported by evidence that it had antidiscrimination policies and reporting procedures in place at the time of the alleged discriminatory conduct and that the plaintiffs failed to take advantage of the procedures. The employer in *Treat* made it clear that it would not offer any evidence of its actions after the plaintiffs made their complaints.

*Treat* underscores that an employer does not impliedly waive an attorney–client privilege merely by using an attorney to investigate a complaint of workplace discrimination but, rather, by subsequently relying on the investigation to prove a *Faragher–Ellerth* defense asserted in a lawsuit. In this case, as in *Harding*, Gelita clearly relied on the investigation as proof of its affirmative defense during the administrative proceeding. Additionally, unlike in *Treat*, defendants relied on the investigation as proof of their affirmative defense during summary judgment proceedings.

Importantly, contrary to defendants' assertion on appeal, corrective measures taken by an employer in response to a complaint by an employee made after the employee has left the employment may be relevant to the reasonableness of care exercised by an employer to prove a *Faragher–Ellerth* defense. The *Faragher–Ellerth* defense was crafted in order to provide a complete defense to vicarious liability for employers who have demonstrated a commitment to abiding by antidiscrimination

statutes. Through this defense, employers have an opportunity to demonstrate they are the type of employer that takes discrimination seriously and affirmatively works to prevent and correct it. Generally, if an employee fails to notify the employer of wrongdoing, courts have found that such failure, coupled with adequate preventative policies, is sufficient to prevail in the defense. *Faragher*, 524 U.S. at 807–08, 118 S. Ct. at 2293.

However, defendants conflate what is *necessary* to prevail in the defense in certain instances with what is *relevant* to the defense. All evidence relating to an employer's steps to prevent and correct harassment goes toward proving that they are the type of company that deserves a complete defense to vicarious liability. Parties can, and frequently do, bolster their positions with evidence beyond what is minimally necessary to succeed. The rules of discovery reach all offered evidence, not merely the minimum evidence necessary to prevail on a claim or affirmative defense. Here, defendants bolstered their affirmative defense beyond what was necessary, in an effort to conclusively prove they are the type of company that deserves a complete defense to liability. This choice was entirely their own. If defendants wish to use Horvatich's investigation as evidence of their commitment to abiding by antidiscrimination statutes, plaintiff may not be kept from disputing that evidence, especially at the summary judgment stage.

The critical question presented when discovery of an attorney investigation is sought in a lawsuit based on workplace discrimination is whether the employer intends to rely on the investigation as evidence to help prove the *Faragher–Ellerth* defense. When confronted with a discovery request, the employer controls the outcome of the waiver issue. The employer may decide to simply refrain from referencing the

investigation in the civil action, in which case it will remain confidential. Or, the employer may choose to explicitly cabin its defense to the period of plaintiff's employment, in which case any reference to the investigation will be met with a relevance objection rather than a notice for deposition. Of course, the employer may also choose to offer the investigation as evidence of its proper corrective actions and waive any privilege over the investigation. The employer's decision must be clear because it will become the basis for the court's ruling.

Defendants plainly relied on Horvatich's investigation to support their affirmative defense in their motion for summary judgment. The district court, therefore, did not abuse its discretion in finding defendants waived attorney–client privilege over the investigation.

Our law permits a party who has waived attorney–client privilege to retract the waiver and reinstate the privilege. *See Squealer Feeds*, 530 N.W.2d at 685. On appellate review, we are reviewing the district court's decision based on the record made before the court. Defendants' position on appeal that the investigation is not "at issue" with respect to the *Faragher–Ellerth* defense is consistent with their position before the district court. But, this position is not a clear declaration by the employer that an investigation into a complaint will not be relied upon to help prove the *Faragher–Ellerth* defense. Instead, it is a legal assertion, not entirely correct, that the investigation would not be relevant to the *Faragher–Ellerth* defense. If defendants wish to retract their waiver, they may make a new record before the district court that clearly and unequivocally establishes the investigation will not be used to support the defense.

**B. Work Product.** Although the district court did not abuse its discretion with respect to waiver of attorney–client privilege, the issue

remains whether plaintiff may discover Horvatich's work product from the 2013 investigation.

Parties may only discover "documents and tangible things" that were prepared by another party "in anticipation of litigation or for trial," if the requesting party demonstrates a "substantial need of the materials" and is "unable without undue hardship to obtain the substantial equivalent of the materials by other means." Iowa R. Civ. P. 1.503(3). However, courts must protect against disclosing "mental impressions, conclusions, opinions, or legal theories of an attorney." *Id.* Iowa work-product protection "resembles Federal Rule of Civil Procedure 26(b)(3), 'and the history and cases under the federal rule provide guidance in interpreting the Iowa counterpart.' " *Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Justice*, 867 N.W.2d 58, 70 (Iowa 2015) (quoting *Ashmead v. Harris*, 336 N.W.2d 197, 199 (Iowa 1983), *abrogated on other grounds by Wells Dairy*, 690 N.W.2d at 48). Although we have not yet considered implied waiver of work-product protection, we have previously assessed subject matter waiver of work-product protection. *See Exotica Botanicals, Inc. v. Terra Int'l, Inc.*, 612 N.W.2d at 801, 807–09 (Iowa 2000) (concluding specific content of attorney's testimony did not amount to waiver of work-product protection).

Courts in other jurisdictions that have adopted the implied at-issue waiver standard within the *Faragher–Ellerth* context have also concluded a party waives work-product protection over investigation documents if the party relies on the investigation to support its affirmative defense. *See, e.g., Koss v. Palmer Water Dep't*, 977 F. Supp. 2d 28, 31 (D. Mass. 2013) ("Defendants' affirmative defense waives the attorney-client privilege and work-product protection for the bulk of the documents submitted for *in camera* review . . . ."); *Reitz v.*

*City of Mt. Juliet,* 680 F. Supp. 2d 888, 894 (M.D. Tenn. 2010) (concluding "the City waived its privilege and work-product protection not by disclosing Berexa's report, but by making tactical use of it in this litigation" in support of a *Faragher–Ellerth* affirmative defense); *McGrath v. Nassau Cty. Health Care Corp.,* 204 F.R.D. 240, 246 (E.D.N.Y. 2001) ("[W]hile the Court finds the waiver of some core work product difficult to sustain, it agrees that NHCC's invocation of the *Faragher–Ellerth* defense has waived the work product privilege under the facts of this case. By weighing fairness concerns against the purpose of the work product privilege, the Court finds that it would be unjust to allow NHCC to invoke the *Faragher–Ellerth* defense under these facts while allowing it to protect the very documents it relies on to assert that defense.").

We agree that when a party places an investigation at issue by relying upon it in support of the *Faragher–Ellerth* affirmative defense, any nonopinion work-product protection over that investigation is necessarily waived. Like attorney–client privilege, a party may not use work-product protection to shield documents from discovery while at the same time relying upon those same documents to support their claim. This is especially true in the context of the *Faragher–Ellerth* affirmative defense. An employer may not point to the thoroughness of an investigation to demonstrate compliance with the ICRA while at the same time shield the plaintiff from disputing the investigation's thoroughness.

Of course, an attorney–investigator's mental impressions, conclusions, opinions, and legal theories remain sheltered from discovery. Although an employer opens the door to discovery of the facts and process of its investigation by relying upon it in support of its affirmative defense, opinion work product is not germane to the objective reasonableness of an employer's investigation. *See Reitz,* 680

F. Supp. 2d at 895 ("Sections of the interview memoranda that reflect the lawyers' mental impressions, opinions, conclusions, judgments, or legal theories are not relevant to the plaintiff's remaining retaliation claim, nor will they lead to the discovery of relevant information. This 'opinion' work product has no bearing on the issues of Reitz's work performance, the discipline she faced before filing her internal complaint, or any other aspect of Reitz's current case."). We therefore find the district court did not abuse its discretion in concluding defendants waived work-product protection over Horvatich's investigation notes. Unless defendants retract their waiver, they must produce all of Horvatich's nonopinion work product that resulted in the ICRC position statement.

**C. Third-Party Waiver.** Plaintiff argues that even if defendants did not waive attorney–client privilege over the contents of the investigation by raising the affirmative defense, they nevertheless waived privilege over the desired information by conducting employee interviews in the presence of a third party.

1. *Error preservation.* As an initial matter, the defendants contest whether this issue is preserved for appeal. Generally, an issue is not preserved unless "a party raises an issue and the district court rules on it." *State ex rel. Miller v. Vertrue, Inc.*, 834 N.W.2d 12, 20 (Iowa 2013). Here, plaintiff argued in his resistance to defendants' motion for protective order:

> By conducting the investigation in the presence of a third party who was not representing Gelita but was actually an adversary to Gelita's interests, Gelita waived and is estopped from claiming attorney-client and work product privileges apply to her communications with them. Ms. Horvatich's thought processes and communications were revealed to the third party by her actions, questions and deeds at the time of her investigation on behalf of Gelita. To the extent there was a privilege, Gelita waived it by the presence of the union.

Plaintiff plainly raised the issue at the district court level. However, the district court did not rule on the third-party waiver issue, as it concluded the affirmative defense waived attorney–client privilege and work-product protections. Nevertheless, "a successful party need not cross-appeal to preserve error on a ground urged but ignored or rejected by the district court." *Venard v. Winter*, 524 N.W.2d 163, 165 (Iowa 1994). Thus, plaintiff sufficiently preserved the issue of whether the presence of the union representative waived privilege over the investigation.

2. *Merits.* Communications that could be cloaked by privilege may nevertheless be discoverable if made in the presence of, or disclosed to, a third party. *See State v. Romeo*, 542 N.W.2d 543, 548 (Iowa 1996). However, when the presence of a third party is "essential for the rendition of a legal opinion, the presence of such persons at attorney-client conferences does not destroy privilege otherwise existing." *Tausz v. Clarion–Goldfield Cmty. Sch. Dist.*, 569 N.W.2d 125, 127 (Iowa 1997).

Plaintiff asks that we go well beyond the parameters of third-party waiver and conclude a third party's presence during investigatory interviews waives privilege over the whole of the investigation. This we decline to do. Horvatich conducted several employee interviews as part of her investigation into the merits of plaintiff's administrative charge. In each interview, she was joined by Tolsma and union representative Hoswald. There is no evidence in the record to demonstrate Hoswald was privy to any internal decision-making or communications about the direction or disposition of the investigation. As such, the only communications that could potentially be discoverable are statements made in Hoswald's presence during employee interviews.

During discovery, defendants produced all of the investigation's witness statements. As well, plaintiff had the opportunity to depose employees who were interviewed and inquire into the nature and content of their interviews. Accordingly, we need not reach the question of whether the presence of a union representative during an internal investigation waives attorney–client privilege, as defendants have not claimed privilege over any communications made in the union representative's presence.

**D. Subject Matter Waiver.** Plaintiff further argues, for the first time on appeal, that even if defendants did not waive attorney–client privilege, employee depositions revealed "Ms. Horvatich's thought process and communications" during the investigation, and as such, the employee testimony amounts to a subject matter waiver of the contents of the investigation. Because plaintiff did not raise this issue to the district court, it has not been preserved for our review.

**IV. Conclusion.**

We affirm the district court order denying defendants' protective order. The case is remanded to the district court for further proceedings consistent with this opinion.

**DISTRICT COURT ORDER AFFIRMED AND CASE REMANDED.**

All justices concur except Waterman, Mansfield, and Zager, JJ., who dissent.

**WATERMAN, Justice (dissenting).**

I respectfully dissent and would hold the district court abused its discretion by compelling the deposition of Gelita's trial counsel Ruth Horvatich and production of her notes prepared in anticipation of litigation.

First, Gelita never waived its attorney–client privilege or work-product protection by pleading or arguing the *Faragher–Ellerth* defense in district court. That defense was based solely on Mr. Fenceroy's failure to use Gelita's reporting procedures *during* his employment, before he retired and filed his discrimination complaint. The majority, contrary to precedent, finds that Gelita impliedly waived the confidentiality of its lawyer's private notes and client communications by including this sentence in its lengthy brief supporting its motion for summary judgment: "Even though Plaintiff was no longer with Gelita at the time of his Complaint, in response to his charge, the Company investigated his allegations, discharged one employee, and disciplined three others." I disagree that sentence constitutes an implied waiver. Gelita never relied on confidential attorney–client communications in asserting its defenses. Gelita was not using the attorney–client privilege as both a sword and shield and never blocked proper discovery into a matter it placed at issue.

Second, even if it was a waiver, Gelita clearly has retracted it. The majority questions that a retraction has occurred but allows Gelita the opportunity to retract the waiver on remand. I think this is unnecessary based on a fair reading of the record and Gelita's appellate briefs.

Third, the majority also misses the opportunity to adopt the showing required under *Shelton v. American Motors Corp.*, 805 F.2d

1323, 1327 (8th Cir. 1986), and confirm that compelling depositions of opposing trial counsel during litigation should be a rare last resort, even when information might be obtained that is not subject to a privilege. This aspect of the court's ruling could lead to a flurry of depositions of opposing counsel and a corresponding decline in civility in the Iowa bar. Frequently, both plaintiff's counsel and defendant's counsel have various nonprivileged interactions with others in the course of working on a case. The majority leaves the door open to each side deposing the other on these interactions. I would not do this. Fenceroy is not entitled to depose Gelita's trial attorney Horvatich under *Shelton.*

**I. Gelita Never Impliedly Waived Its Attorney–Client Privilege or Work-Product Protection.**

The majority makes it too easy to find an implied waiver of the attorney–client privilege and work-product doctrine. There was no such waiver here. Gelita never listed attorney Horvatich as a witness. *See Squealer Feeds v. Pickering*, 530 N.W.2d 678, 684–85 (Iowa 1995), *abrogated on other grounds by Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 690 N.W.2d 38, 48 (Iowa 2004). Gelita never disclosed any privileged communications from Horvatich in responding to Fenceroy's claims. *See Miller v. Cont'l Ins.*, 392 N.W.2d 500, 504–05 (Iowa 1986). Nor did Gelita rely on Horvatich's 2013 investigation to support its *Faragher–Ellerth* defense. Rather, Gelita made clear this defense is based on Fenceroy's failure to utilize Gelita's complaint and antidiscrimination reporting policy and procedures. It is undisputed that Fenceroy's employment ended before he filed his discrimination complaint. Gelita did not place Horvatich's legal advice at issue through fleeting references to her investigation conducted after Fenceroy retired and the subsequent termination or discipline of several employees. The

cases relied on by the majority are distinguishable for that reason—in the cases finding an implied waiver, the employer was relying on the reasonableness of its counsel's investigation conducted while the plaintiff was still employed. Not so here.

The majority primarily relies on *Harding v. Dana Transport, Inc.*, 914 F. Supp. 1084 (D.N.J. 1996), while Gelita relies on cases such as *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, No. 1:08–CV–173, 2009 WL 1543651 (N.D. Ind. June 2, 2009). *Treat* is on point while *Harding* is not.

In *Harding*, two employees filed an administrative complaint alleging sexual discrimination; one employee filed her complaint while still employed, unlike Fenceroy. 914 F. Supp. at 1087 & n.2. The employer hired outside counsel to investigate their allegations. *Id.* at 1088. The employees later resigned and filed a Title VII claim. *Id.* at 1087 & n.2. In the Title VII lawsuit, the employer's counsel admitted that he intended to use the investigation as evidence the employer acted reasonably. *Id.* at 1088. The defense attorney stated,

> Dana is not submitting any of the specifics of [the attorney's] investigation as a basis of defense in this matter. Dana merely intends to offer the fact that [the attorney] did conduct an investigation as part of his representation of Dana in response to allegations filed with the Division on Civil Rights. *Whether this investigation, coupled with other actions taken on behalf of Dana in the context of the facts in this case, constitutes evidence of reasonable conduct on the part of Dana is a jury question*, but does not compel disclosure of the specifics of [the attorney's] investigation.

*Id.* at 1093 (emphasis added). The *Harding* court concluded the employer had put counsel's investigation at issue, waiving its attorney–

client privilege. *Id.* at 1096. Other decisions relied on by the majority are distinguishable for the same reasons.[1]

By contrast, in *Treat*, three employees filed an administrative complaint *after* their employment ended, as did Fenceroy. 2009 WL 1543651, at *1, *13. The employer hired outside counsel to conduct an investigation. *Id.* at *6. The employer used the attorney's investigation during the EEOC proceeding but did not rely on the investigation in district court. *Id.* at *7, *13. The *Treat* court distinguished *Harding* and found that the investigation was not put at issue and was not discoverable. *Id.* at *12–13. The *Treat* court reasoned,

> [I]t has been fleshed out during the discovery process that Kelley's defense is not that it acted reasonably upon learning of the Plaintiffs' complaints, but rather that the Plaintiffs did not take advantage of Kelley's policies in reporting harassment and discrimination. In other words, because the Plaintiffs allegedly did not report their complaints during their employment, there is no internal investigation of any complaints to rely upon; the only investigation (conducted by outside counsel) was for the purpose of preparing for litigation, once the EEOC charges were filed. . . . *Thus, because Kelley is not actually relying on the adequacy of any investigation to support an affirmative defense, Kelley has not placed outside counsel's investigation at issue.*

*Id.* at *13 (emphasis added). That is what we have here.

Other courts have likewise rejected implied waiver claims under the *Faragher-Ellerth* defense when, as here, the employer confirms it is

---

[1]*See Angelone v. Xerox Corp.*, No. 09–CV–6019, 2011 WL 4473534, at *1–3 (W.D.N.Y. Sept. 26, 2011) (concluding that documents relating to internal investigation completed before employee filed an administrative complaint were discoverable because employer invoked the *Faragher–Ellerth* defense, but recognizing that documents created after the conclusion of the internal investigation were not discoverable as long as the company does "not refer to or rely on these . . . documents or the adequacy of [the later] investigation"); *Walker v. County of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005) (finding that the employer intended to rely on attorney's investigation as a defense and therefore "must turn over [the attorney's] report as it pertains to the pre-litigation investigation into [the employee's] claim of discrimination").

not relying on the lawyer's investigation but rather the employee's failure to use the employer's complaint procedures. *See, e.g., Robinson v. Vineyard Vines, LLC*, 15 Civ. 4972 (VB)(JCM), 2016 WL 845283, at *5 (S.D.N.Y. Mar. 4, 2016) ("Given these representations by Defendants' counsel, I find that Defendants have not waived any privilege as to the Investigative Documents by asserting the [*Faragher–Ellerth*] Defense."); *Geller v. N. Shore Long Island Jewish Health Sys.*, No. CV 10–170(ADS)(ETB), 2011 WL 5507572, at *4 (E.D.N.Y. Nov. 9, 2011) (denying motion to compel because "defendants' counsel has affirmatively represented to the Court that defendants have no intention of 'using the investigation to avoid liability'"); *City of Petaluma v. Super. Ct.*, 204 Cal. Rptr. 3d 196, 201–02, 207 (Ct. App. 2016) (holding there was no waiver of attorney–client privilege or work-product protection when the employer was not relying on the postemployment investigation but instead was arguing that the employee "unreasonably failed to take advantage of any preventative or corrective opportunities"); *see also McGrath v. Nassau Cty. Health Care Corp.*, 204 F.R.D. 240, 244–45 (E.D.N.Y. 2001) (rejecting the argument "that employers put any post-harassment investigation conducted at issue simply by invoking the *Faragher–Ellerth* defense" because the proposition "would eviscerate both the attorney-client privilege and the work product doctrine" while concluding that this employer did put the sufficiency of its investigation at issue); *cf. EEOC v. Rose Casual Dining, L.P.*, No. Civ.A. 02–7485, 2004 WL 231287, at *3–4 (E.D. Pa. Jan. 23, 2004) (concluding that plaintiff was entitled to documents related to the employer's internal investigation because the employer "raised the reasonableness of its internal investigation as an affirmative defense to [p]laintiff's allegations" but

denying plaintiff's motion to compel documents generated from second investigation that began only after the plaintiff had been terminated).

As the great weight of authority shows, the majority errs by concluding Gelita waived its attorney–client privilege and work-product protection merely by pleading the *Faragher–Ellerth* defense and referring to its postemployment investigation in the agency proceedings and summary judgment filings. In *Exotica Botanicals, Inc. v. Terra International, Inc.*, we held that a lawyer's general testimony regarding his investigation in prior litigation and related communications with an adverse party did not waive work-product protection. 612 N.W.2d 801, 809 (Iowa 2000). We concluded the district court abused its discretion by compelling production of documents constituting work product. *Id.* We emphasized the adverse consequences that would result if courts could find a waiver of work-product protections merely because the lawyer "discuss[ed] the general nature of . . . information" relevant to liability with an opposing party:

> It was [attorney] Kalafut's duty to communicate with Du Pont regarding the Benlate claims and to evaluate Terra's liability in the matter. But to say that Kalafut waived his work product privilege concerning information that might potentially absolve Terra of liability, simply by discussing the general nature of that information with Du Pont, would mean that an attorney could never discuss the positive aspects of his or her case with opposing counsel for fear that such discussion would amount to a waiver of the work product privilege as to all documents supporting that position. If this were the case, settlement negotiations and communication between the parties in general would break down. Such a result would be inconsistent with a commonsense application of the work product doctrine and certainly inconsistent with the goal of resolving cases in a timely manner.

*Id.*

The majority's decision today conflicts with *Exotica Botanicals*. Iowa lawyers should not have to worry that they will waive privilege or work-product protections simply by general references to their investigation or their client's position.

## II. Gelita Already Retracted Any Alleged Waiver.

The majority correctly acknowledges that a party who waived the attorney–client privilege by asserting a particular defense can retract the waiver. *See Squealer Feeds*, 530 N.W.2d at 685. In *Squealer Feeds*, an employee alleged the workers' compensation insurer acted in bad faith. *Id.* at 680, 683. The defendant asserted a defense of the advice of counsel from the attorney who defended the workers' compensation claim and listed that attorney as an expert witness for trial. *See id.* at 680–81. We held the defendant thereby waived the attorney–client privilege as to his advice on that issue, but we also made clear the defendant could undo the waiver by withdrawing the lawyer as a trial witness. *Id.* at 684–85 (noting a withdrawal of the witness designation would "reestablish the attorney–client privilege"). Gelita never listed its outside counsel, Horvatich, as a witness. In any event, Gelita has clearly retracted any implied waiver.

In its opening brief on appeal, Gelita confirmed that it was *not* relying on its attorney's investigation to support a *Faragher–Ellerth* defense:

> In this case, the *Faragher–Ellerth* defense is based on Fenceroy's unreasonable failure to take advantage of preventative and corrective opportunities available during his employment. Defendants are not relying upon any investigation conducted by defense counsel after Fenceroy filed his discrimination charge. Those complaints were not made by Fenceroy during his employment and therefore, the adequacy of that investigation and remedial action undertaken by the Company are not "at issue" nor are they part of Gelita's *Faragher–Ellerth* affirmative defense.

Appellants' Final Br. 14. Gelita made the same point in its reply brief:

> Defendants' *Faragher–Ellerth* defense is not that it conducted a reasonable investigation after receiving the ICRC charge, but that Plaintiff failed to report the alleged conduct during his employment and thus failed to take advantage of the Company's policies on reporting harassment and discrimination. Any investigation and remedial response undertaken after Complainant left his employment and filed his ICRC charge is simply not necessary to Defendant's *Faragher–Ellerth* defense and, as such, is not at issue.

Appellants' Final Reply Br. 2–3. Because Gelita has already withdrawn any alleged implied waiver, the district court on remand should grant Gelita's motion for protective order. The majority seemingly agrees in principle, but wants Gelita to put its withdrawal on the record when this case returns to district court. I do not think that is needed, although in the long run it should not make a difference.

**III. Fenceroy Failed to Show He Was Entitled to Depose Gelita's Trial Counsel.**

The majority opens the door to compelling the depositions of opposing counsel in pending lawsuits. Compelled depositions of opposing counsel have long been disfavored. *See Hickman v. Taylor*, 329 U.S. 495, 511–13, 67 S. Ct. 385, 393–95 (1947). We previously allowed a deposition of plaintiffs' counsel only after the plaintiffs waived attorney–client privilege by testifying about their reliance on his specific legal advice to them on the statute of limitations. *Miller*, 392 N.W.2d at 505. We framed the issue as "whether plaintiffs may disclose a privileged attorney communication . . . and then invoke a privilege to prevent disclosure of other communications by the attorney about the same matter." *Id.* at 504. We concluded the "voluntary disclosure of the content of a privileged communication constitutes waiver as to all other communications on the same subject." *Id.* at 504–05. That is not what

Gelita did. Gelita disclosed no privileged communications by Horvatich to support its *Faragher–Ellerth* defense. *Miller* is inapposite.

Two years after *Miller,* the United States Court of Appeals for the Eighth Circuit in *Shelton* addressed the circumstances under which the district court may compel the deposition of the opposing party's trial counsel. 805 F.2d at 1327. The *Shelton* court required a showing that

> (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged [or the privilege has been waived]; and (3) the information is crucial to the preparation of the case.

*Id.* (citation omitted). We should follow *Shelton,* and I would adopt it now. Because Fenceroy cannot satisfy this test, the district court abused its discretion by compelling the deposition of Horvatich.

The *Shelton* rule has been widely adopted by state and federal courts as the standard for determining whether a litigant may compel the deposition of opposing trial counsel. *Id.*; *Nationwide Mut. Ins. v. Home Ins.,* 278 F.3d 621, 628 (6th Cir. 2002); *Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1112 & n.15 (10th Cir. 2001) (citing *Boughton v. Cotter Corp.,* 65 F.3d 823, 830 (10th Cir. 1995)); *3M Co. v. Engle,* 328 S.W.3d 184, 188 & n.15 (Ky. 2010) (citing *McMurry v. Eckert,* 833 S.W.2d 828, 830 (Ky. 1992)); *Club Vista Fin. Servs. v. Eighth Judicial Dist. Ct.,* 276 P.3d 246, 250 (Nev. 2012) (en banc); *Estate of Mikulski v. Cleveland Elec. Illuminating Co.,* No. 96748, 2012 WL 504505, at *4 (Ohio Ct. App. Feb. 16, 2012); *Voorhees Cattle Co., LLP v. Dakota Feeding Co., LLC,* 868 N.W.2d 399, 407 (S.D. 2015).

The parties briefed and argued *Shelton* here. Yet the majority, without expressly accepting or rejecting *Shelton,* declines to address the showing required to depose a party-opponent's trial counsel during a

lawsuit. The majority assumes Gelita will reconfirm its retraction of any alleged reliance on Horvatich's investigation when the case returns to district court and that the district court will then preclude her deposition. Presumably so. The problem is that the majority today is *affirming* the district court's order compelling Horvatich's deposition based on the existing district court record. The majority thereby blesses the overly aggressive practice of compelling the deposition of opposing trial counsel without a proper showing of necessity.

Fenceroy cannot meet any of the three *Shelton* requirements. First, Gelita already provided Fenceroy with the statements taken from the witnesses Horvatich interviewed, and Fenceroy deposed those witnesses. Fenceroy could explore why Gelita terminated one employee and disciplined others by deposing the decisionmaker, Jeff Tolsma, Gelita's Vice President of Business Support. Fenceroy has not shown why those sources of information are inadequate, much less demonstrated that a deposition of Horvatich is his *only* means to obtain discovery on Gelita's investigation and resulting actions. A mere allegation of need is insufficient. *Cf.* Iowa R. Civ. P. 1.503(3); *Squealer Feeds*, 530 N.W.2d at 688–89 (requiring party seeking work product to demonstrate the information could not be obtained by reviewing records already produced, depositions of the company decision-maker, or other nonprivileged sources). Second, Horvatich's communications remain privileged, with any alleged implied waiver retracted. Third, Fenceroy has not shown that Horvatich's testimony is crucial or even relevant to his case.

I fear that the majority's failure to clarify the showing required to depose opposing trial counsel could lead to increasingly aggressive litigation tactics that undermine the professionalism and civility of our

trial bar and needlessly increase the costs and burdens of pretrial discovery.

Going forward, I also fear today's decision will have a chilling effect on the routine practice of retaining outside counsel to investigate discrimination claims. If the employer's lawyer can be deposed by plaintiff merely because the employer pleads a *Faragher–Ellerth* defense, will two different law firms have to be retained—one to investigate and the other to try the case? Will employers limit what they tell their lawyer who may be compelled to testify by the litigation adversary? Or will some employers be reluctant to retain a lawyer who might be compelled to provide adverse testimony? Will such employers lose the benefit of sound legal advice that would otherwise help them improve compliance with employment laws?

Our legal system venerates the attorney–client privilege for vitally important reasons:

> The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682 (1981) (citation omitted). Discouraging use of lawyers will undermine the primary purpose of our civil rights laws—to avoid discrimination in the workplace. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 805–06, 118 S. Ct. 2275, 2292 (1998) ("Although Title VII seeks 'to make persons whole for injuries suffered on account of unlawful employment discrimination,' its 'primary objective,' like that of any statute meant to

influence primary conduct, is not to provide redress but to avoid harm." (quoting *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 417–18, 95 S. Ct. 2362, 2371–72 (1975))); *cf. Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 578 (Iowa 2017) ("Employers would lose a key incentive to take corrective action if they were automatically liable for harassment whether or not they put a stop to it."). We should encourage employers to retain counsel to investigate, prevent, and help remedy discrimination. The majority today instead discourages the use of employment lawyers by allowing adverse litigants to easily invade the confidentiality so important to the attorney–client relationship.

For these reasons, I respectfully dissent.

Mansfield and Zager, JJ., join this dissent.